[No. B193327. Second Dist., Div. One. Oct. 17, 2007.]

UNZIPPED APPAREL, LLC, Plaintiff and Respondent, v.
GARY BADER, Defendant;
HIPPIE JEANS, LLC, et al., Objectors and Appellants.

 

## Counsel

Browne Woods & George, Edward A. Woods, Peter W. Ross, Michael A. Bowse, Marta B. Almli; Law Offices of Gary Freedman and Gary A. Freedman for Objectors and Appellants.

Greenberg Traurig, George M. Belfield, Jordan D. Grotzinger; Blank Rome and Brian S. Paszamant for Plaintiff and Respondent.

## Opinion

**MALLANO, Acting P. J.**—In civil litigation, discovery may be obtained from a nonparty only through a "deposition subpoena." (Code Civ. Proc., § 2020.010, subd. (b); section references are to the Code of Civil Procedure unless otherwise indicated.) The Civil Discovery Act (Act) (§ 2016.010 et seq.) authorizes a nonparty's "oral deposition," "written deposition," and "deposition for [the] production of business records" (§ 2020.010, subd. (a)(1)–(3)).

A deposition subpoena for business records directs a nonparty's "custodian of records" to deliver a copy of the requested documents to a "deposition officer" or to make the original documents available to the subpoenaing party for inspection and copying. (§§ 2020.410, subd. (c), 2020.430, subds. (a)–(e).) The Act refers to the custodian of records as the "deponent." (§§ 2025.280, subd. (b), 2020.230, subd. (b)).

If a deponent fails to produce a requested document under his or her control, the subpoenaing party may bring a motion to compel production "no later than 60 days after the completion of the *record of the deposition*." (§ 2025.480, subd. (b), italics added.)

The question on appeal is whether this 60-day limit applies to a subpoena for business records as distinguished from a subpoena for an oral or written deposition. Here, in response to a subpoena for business records, the nonparties served timely objections and did not produce any documents. The trial court granted a motion to compel brought more than 60 days after the objections were received, stating that, because no "deposition" had been taken, the time limit was not applicable. We reverse, concluding that the 60-day limit applies because a response to a business records subpoena, namely, objections, is a "record of the deposition."

# I

# BACKGROUND

In November 2004, Unzipped Apparel, LLC, filed suit against Gary Bader in a New York state court, alleging that Bader, as Unzipped's president of sales, had breached fiduciary duties, engaged in unfair competition, and tortiously interfered with Unzipped's business (*Unzipped Apparel, LLC v. Bader* (N.Y.Sup.Ct., N.Y. County, 2004, No. 603702/2004) (New York action)). In connection with the New York action, Unzipped sought documents from two nonparty companies in California.

On November 17, 2005, Unzipped filed a petition in the court below, seeking deposition subpoenas for the production of business records from Hippie Jeans, LLC, and Commerce Clothing, LLC, both located in Commerce, California. Attached to the petition were a commission and an order issued in the New York action, authorizing counsel for Unzipped to secure the requisite subpoenas from the California state courts.

Pursuant to the petition, Unzipped obtained and served two "Deposition Subpoena[s] for Production of Business Records," identifying the "deponents" as the custodians of records of Hippie Jeans and Commerce Clothing, respectively. (See 2 West's Cal. Judicial Council Forms (July 2004 ed.) form 982(a)(15.2) (rev. Jan. 1, 2000).) The subpoenas ordered the deponents to deliver a true, legible, and durable copy of several categories of documents to the "deposition officer," identified as Unzipped's counsel. The production was scheduled for December 7, 2005. The deponents were also directed to provide an affidavit describing the documents being produced or, in the alternative, indicating that the company did not have any of the requested documents. (See Evid. Code, § 1561.)

On the date of production, Hippie Jeans and Commerce Clothing separately responded by serving Unzipped with objections to the subpoenas and declining to produce any documents. By letter dated December 16, 2005, Unzipped informed both companies that it regarded their objections as unfounded, explaining its position in detail. On January 25, 2006, Unzipped and the companies attempted to resolve the matter through a meeting of their attorneys. That effort failed.

On March 1, 2006, Unzipped filed a motion in the trial court, seeking to compel production of the subpoenaed records from Hippie Jeans and Commerce Clothing. The companies filed a joint opposition, arguing that, as a procedural matter, the motion was untimely. In particular, they argued that the motion had to be filed within 60 days after their objections were received

on the date of production—no later than February 6, 2006. The opposition also addressed the motion on the merits.

On June 21, 2006, the motion came on for hearing and was taken under submission. By order dated August 7, 2006, the trial court granted the motion in its entirety and directed Hippie Jeans and Commerce Clothing to produce the requested documents pursuant to a protective order to be agreed upon by the parties. On the timeliness issue, the trial court explained: "CCP 2025.480(b) states that a motion to compel shall be made 'no later than 60 days after the completion of the record of the deposition . . . .' There was no deposition here and therefore this time limit does not apply." Hippie Jeans and Commerce Clothing appealed.

## II

## DISCUSSION

" 'A trial court's interpretation of a statute is reviewed de novo,' and 'the application of a statutory standard to undisputed facts is reviewed de novo.' " (*Emeryville Redevelopment Agency v. Harcros Pigments, Inc.* (2002) 101 Cal.App.4th 1083, 1095 [125 Cal.Rptr.2d 12].)

■ "The objective of statutory interpretation is to ascertain and effectuate legislative intent. To accomplish that objective, courts must look first to the words of the statute, giving effect to their plain meaning. If those words are clear, we may not alter them to accomplish a purpose that does not appear on the face of the statute or from its legislative history. . . . Whenever possible, we must give effect to every word in a statute and avoid a construction making a statutory term surplusage or meaningless." (*In re Jerry R.* (1994) 29 Cal.App.4th 1432, 1437 [35 Cal.Rptr.2d 155], citation omitted.)

Section 2025.480, which dictates the timing of a motion to compel with respect to a deposition, states:

"(a) If a *deponent fails* to answer any question or *to produce any document* or tangible thing under the deponent's control that is *specified in* the deposition notice or *a deposition subpoena*, the party seeking discovery may move the court for an order compelling that answer or *production.*

"(b) This motion shall be made no later than 60 days after the *completion of the record of the deposition* . . . .

"(c) Notice of this motion shall be given to all parties and to the deponent either orally at the examination, or *by subsequent service in writing.* . . .

"(d) Not less than five days prior to the hearing on this motion, the moving party shall lodge with the court a certified copy of *any parts* of the stenographic transcript of the deposition that *are relevant* to the motion. . . ." (Italics added.)

■ To determine the meaning of this statute, we do not construe it in isolation but look to the entire statutory scheme. (See *Peatros v. Bank of America* (2000) 22 Cal.4th 147, 167 [91 Cal.Rptr.2d 659, 990 P.2d 539].) Nor, as Unzipped urges, will we apply New York law in resolving the issue on appeal. ■ California law governs discovery disputes that arise in our courts. (See *Hambrecht & Quist Venture Partners v. American Medical Internat., Inc.* (1995) 38 Cal.App.4th 1532, 1542, fn. 8 [46 Cal.Rptr.2d 33]; *World Wide Imports, Inc. v. Bartel* (1983) 145 Cal.App.3d 1006, 1012, fn. 3 [193 Cal.Rptr. 830]; *Parhm v. Parhm* (1969) 2 Cal.App.3d 311, 315 [82 Cal.Rptr. 570].)

■ The Act permits a party to obtain information from *another party* through (1) depositions; (2) interrogatories; (3) inspections of documents, things, and places; (4) physical and mental examinations; (5) requests for admissions; and (6) the exchange of expert witness information. (§ 2019.010.) Except for the deposition of a party's officers, directors, managing agent, and employees—which may be taken on simple notice (see §§ 2025.280, subd. (a), 2025.240)—discovery from a *nonparty* may be obtained only by "deposition subpoena" (§ 2020.010, subd. (b)). Such a subpoena may be used to conduct an "oral deposition," a "written deposition," or a "deposition for production of business records and things." (§ 2020.010, subd. (a)(1)–(3); see §§ 2020.020, 2020.310–2020.510.) The subpoena must be served on the "deponent" regardless of the type of deposition being conducted. (§ 2025.280, subd. (b); see § 2020.220.) If only the production of business records is being sought, the deponent is the custodian of records. (See §§ 2025.280, subd. (b), 2020.410, subds. (a)–(c), 2020.430, subds. (a), (e), 2020.230, subd. (b).)

"Service of a deposition subpoena that does not require the personal attendance of a custodian of records or other qualified person, under [a subpoena commanding only the production of business records], shall be accompanied, whether or not demanded by the deponent, by a payment in cash or by check of the witness fee required by . . . the Evidence Code." (§ 2020.230, subd. (b).) The "witness fee" is the cost to the nonparty of making the records available, such as expenses for gathering and copying the records. (See Evid. Code, § 1563.)

■ A notice of an oral or written deposition must set forth detailed information about when, where, and how the deposition will be taken (§§ 2025.220, subd. (a), 2028.020), but "where . . . only the production by a

nonparty of business records . . . is desired, a copy of the deposition subpoena shall serve as the notice of deposition" (§ 2025.220, subd. (b)).

█ A business records subpoena directs the nonparty's custodian of records (or other qualified person) to deliver the requested documents (in person, by messenger, or by mail) to the "deposition officer" specified in the subpoena. (§ 2020.430, subd. (a).) The deposition officer need not be a certified shorthand reporter but may be an attorney, a registered professional photocopier, or anyone statutorily exempt from the photocopier registration requirements. (§ 2020.420; see § 2025.330, subd. (b); Bus. & Prof. Code, § 22451.) The delivery may be accomplished, as directed in the subpoena, by providing a true, legible, and durable copy of the documents at either the office of the deposition officer or the office of the business responding to the subpoena. (§ 2020.430, subds. (a), (b), (c)(2).) Alternatively, a party may opt to inspect the *original* documents and make its own copies at the office of the responding business. (§ 2020.430, subds. (c)(1), (e); Evid. Code, § 1560, subd. (e).) Under any of these methods of delivery, the custodian of records must execute an affidavit identifying the records and describing specific aspects of their preparation. (§ 2020.430, subd. (a)(2); Evid. Code, § 1561.) If the nonparty does not have any of the records listed in the subpoena or has only some of them, the affidavit must so state. (Evid. Code, § 1561, subd. (b).)

█ Based on the foregoing language, we conclude that, under the plain meaning rule, the Act contemplates that discovery conducted by way of a business records subpoena is a "deposition." In *California Shellfish, Inc. v. United Shellfish Co.* (1997) 56 Cal.App.4th 16 [64 Cal.Rptr.2d 797] (*Shellfish*), the court reached the same conclusion. *Shellfish* involved the application of the 20-day "deposition hold," which precludes a plaintiff from serving a "deposition notice" until "20 days after the service of the summons on, or appearance by, any defendant." (§ 2025.210, subd. (b).) The plaintiff in *Shellfish* served subpoenas for business records on a nonparty before any defendant was served with process or had appeared. The nonparty moved to quash the subpoenas for violation of the 20-day hold. The plaintiff argued that the hold applied only to oral depositions of a party, not a business records subpoena served on a nonparty. The trial court rejected that argument. So did the Court of Appeal, explaining: "The [statutory] inclusion, under the heading 'Oral deposition,' . . . of several specific provisions relating to deposition subpoenas which seek only business records demonstrates that the Legislature included a [business records] subpoena within the general category of 'oral depositions,' and intended the provisions of section [2025.210], including the [20-day] hold in subdivision [(b)] to apply. . . .

"*Every* section of the Discovery Act pertaining to any method of discovery enumerated in section [2019.010] requires that at least one defendant has

been served with the summons and complaint, and is subject to a holding period after service on a defendant, or requires that the party to whom the discovery is propounded has been served with the summons and complaint. . . . If, as [plaintiff] contends, the deposition hold does *not* apply when a deposition subpoena seeks only business records, this would be the only exception to application of a hold. There is no rationale for such an exception." (*Shellfish*, *supra*, 56 Cal.App.4th at p. 22, citations & fn. omitted.)

In *Monarch Healthcare v. Superior Court* (2000) 78 Cal.App.4th 1282 [93 Cal.Rptr.2d 619] (*Monarch*), a nonparty responded to a business records subpoena, producing some of the requested documents but raising objections and withholding other documents. The plaintiff moved to compel, arguing that the objections had been waived because the nonparty had not obtained an order to quash or a protective order. The trial court agreed and granted the motion to compel. The Court of Appeal vacated the order, stating that, although the nonparty could have sought relief from the trial court before the production, it was not required to do so. Rather, by statute, " '[t]he protection of information from discovery on the ground that it is privileged . . . is waived unless a specific objection to its disclosure is timely made *during* the deposition.' " (*Monarch*, at p. 1288, quoting former § 2025, subd. (m)(1), now § 2025.460, subd. (a).) Thus, the nonparty could properly raise objections for the first time at the document production. (See *Monarch*, at pp. 1284, 1288–1290 & fn. 2.) The court rejected the contention that the process of responding to a business records subpoena is not a "deposition" within the meaning of the Act. (78 Cal.App.4th at pp. 1288–1289.)

Unzipped contends that, even if this case involves a deposition, a response to a subpoena consisting only of objections—without the production of any documents—is not a "record" of a deposition. We disagree.

In that regard, Unzipped equates "the record" with "transcript," arguing that the 60-day time limit does not apply in this case because there was no transcript. But this argument runs afoul of the statutory language. The Act uses the term "transcript" when referring to the stenographic transcription of oral testimony by a certified shorthand reporter. (See §§ 2025.330, subd. (b), 2025.510, 2025.520.) In contrast, a subpoena seeking only business records does not involve any testimony and permits a registered professional photocopier or an attorney to handle the production, namely, by making copies. And if the business records subpoena so indicates, the custodian of records may simply mail a copy of the requested records to the subpoenaing party, in which case no one makes an appearance.

■ Further, "the record," as compared to "transcript," is broader in scope, meaning a documentary account of some act or event designed to memorialize what was done. (See Black's Law Dict. (8th ed. 2004) p. 1301, col. 1;

Webster's 3d New Internat. Dict. (2002 ed.) p. 1898, col. 1.) A business records subpoena often results in one of two responses: a partial production based on a few objections or no production based on more extensive objections. Under either scenario, upon receipt of the response, the subpoenaing party has all of the information it needs to prepare a motion to compel. We therefore conclude that neither the number of objections nor the proportion of records produced should be used in defining "the record" for purposes of determining when to bring a motion to compel.

By analogy, where a *party* serves a demand for documents on *another party* (see §§ 2031.010–2031.040), a motion to compel is subject to a filing deadline as long as a timely response to the demand is made. That deadline applies whether the responding party agrees to a partial production or objects to the demand in its entirety and produces nothing. (See §§ 2031.210–2031.260, 2031.300, 2031.310, subds. (a), (c).) Similarly, a party's timely response to interrogatories or to requests for admissions—regardless of the number of objections—requires that a motion to compel be filed within a statutory time period. (See §§ 2030.210–2030.260, 2030.290, 2030.300, subds. (a), (c), 2033.210–2033.250, 2033.280, 2033.290, subds. (a), (c).)

*Shellfish* explained that the type of argument made by Unzipped, if accepted, would improperly single out *nonparties* for different, unfair treatment. (See *Shellfish, supra,* 56 Cal.App.4th at p. 22.) In discovery between parties—document demands, interrogatories, and requests for admissions— the timely service of objections triggers a filing deadline for a motion to compel. There is no rationale justifying an exception—an open-ended filing period—for nonparties who serve timely objections to a business records subpoena. (See *Shellfish, supra,* 56 Cal.App.4th at p. 22.) And *Monarch* teaches: "Discovery procedures are generally less onerous for strangers to the litigation. That is because they are less likely to be represented by counsel, familiar with the issues, or able to react with alacrity before responses are due. Why ask more of them than of represented parties? . . . 'While all discovery devices are available against a party, only deposition subpoenas can be directed to a nonparty. . . . [¶] The distinction between parties and nonparties reflects the notion that, by engaging in litigation, the parties should be subject to the full panoply of discovery devices, *while nonparty witnesses should be somewhat protected from the burdensome demands of litigation.'* . . ." (*Monarch, supra,* 78 Cal.App.4th at pp. 1289–1290, citation omitted.)

■ Nor is the 60-day period rendered inapplicable to business records subpoenas merely because section 2025.480 refers to the "completion" of the record of the deposition. (See § 2025.480, subd. (b).) Not all document productions are completed on the date stated in the subpoena. If the subpoenaing party opts to inspect and copy the original documents at the office of the responding business, "the record" of the production could take days to complete. This may occur in part because the subpoenaing party's access to the documents is limited by statute to either the business's normal hours—the time when the business is normally open to the public—or six hours a day, whichever is greater. (See § 2020.430, subd. (c)(1); Evid. Code, § 1560, subd. (e).) Until the entire inspection is finished, including the raising of any objections during that process, the necessity and scope of a motion to compel may not be known. Consequently, if on the first day of an inspection, a party is escorted to a warehouse full of documents, the party can rest assured that the 60-day period will not begin to run until the production is over.

■ Unzipped points out that section 2025.480 appears in a chapter of the Act entitled "Oral Deposition Inside California" (see 21A West's Ann. Code Civ. Proc. (2007 ed.) pt. 4, tit. 4, ch. 9, p. 101), arguing that the 60-day period applies only to oral depositions. But, as the court stated in *Monarch*, rejecting the same argument: "The title does not make the law. . . . And despite the title, [the chapter] does contain provisions pertaining to depositions for production of business records . . . ." (*Monarch, supra*, 78 Cal.App.4th at pp. 1288–1289, citations omitted.) Further, as *Shellfish* recognized, "the Legislature included a [business records] subpoena within the general category of 'oral depositions . . . .' " (*Shellfish, supra*, 56 Cal.App.4th at p. 21.)

Our conclusion that section 2025.480 governs business records subpoenas is also supported by the language of the statute's first subdivision, which refers not only to the deponent's "fail[ure] to answer any question" but also to the "fail[ure] to . . . produce any document . . . under the deponent's control." (§ 2025.480, subd. (a).) Thus, oral and written depositions *and* document productions are all covered. In addition, subdivision (a) refers to documents sought by either a "deposition notice or a deposition subpoena," so the statute applies to parties and nonparties. And, under subdivision (c), notice of the motion to compel may be given either "orally at the examination"—which would apply to a deposition at which the deponent testifies—or "by subsequent service in writing"—which would apply to a subpoena seeking only business records. (See Cal. Rules of Court, rule 3.1025 [discussing notice required for nonparty deponents].)

Nothing in subdivision (d) of section 2025.480 is to the contrary. That provision states that the relevant pages of the deposition transcript, *if any*, shall be lodged with the trial court before the hearing on the motion. Thus, where the motion to compel involves the failure to answer a question, the pertinent part of the transcript must be lodged. But where the motion involves the failure to produce documents in response to a business records subpoena, no part of any transcript will be relevant. Subdivision (d) ensures that the motion will be tailored to the type of deposition at issue.

Finally, Unzipped's reliance on section 1987.1 is misplaced. That statute provides: "When a *subpoena* requires the attendance of a witness *or* the production of books, documents or other things . . . at the taking of a deposition, the court, upon motion *reasonably made* by the party, the witness, or any consumer . . . , may make an order quashing the subpoena entirely, modifying it, or directing compliance with it upon such terms or conditions as the court shall declare, including protective orders." (Italics added.) Unzipped emphasizes that section 1987.1 does not contain a specific deadline for bringing a motion to compel but states only that a motion must be "reasonably made." From this, Unzipped jumps to the conclusion that its motion was timely because it was brought within a *reasonable time*.

We reject this construction. For one thing, the Legislature knows how to use "reasonable time" when it wants to refer to a *temporal* limit. (See, e.g., §§ 473 [motion for relief from mistake, inadvertence, surprise, or excusable neglect must be made within "reasonable time" not to exceed six months], 1985.6, subd. (d) [subpoena to obtain employment records must be served sufficiently in advance to allow the witness "reasonable time" to locate records], 2020.220, subd. (a) [where deposition subpoena requires personal attendance of deponent, subpoena must be served so that deponent has "reasonable time" to travel to place of deposition], 2031.030, subd. (c)(2) [document demand must specify a "reasonable time" for production not less than 30 days after service of demand]; Prob. Code, § 11640, subd. (c) [if estate is not in condition to be closed, the administration may continue for "reasonable time"].) On the other hand, "reasonably made" suggests the *manner* in which an act is accomplished. (See, e.g., § 396b, subd. (b) [on motion to transfer action to proper court, sanctions may be imposed against losing party for rejecting "reasonably made" offer to stipulate to change of venue]; *Titmas v. Superior Court* (2001) 87 Cal.App.4th 738, 743 [104 Cal.Rptr.2d 803] [" 'motion reasonably made,' " as used in section 1987.1, may refer to necessity to give notice of motion and provide adequate opportunity to be heard].)

Also, there is no need for section 1987.1 to set forth filing deadlines because they appear elsewhere in the code. For example, if a party serves a subpoena to obtain a nonparty's "personal" records (§ 1985.3), and the nonparty serves a written objection to the subpoena, the party must file a motion to compel under section 1987.1 within 20 days after service of the objection (§ 1985.3, subd. (g), pars. 2–4). Similarly, if a subpoena seeks someone's employment records, the employee can file a motion to quash or modify the subpoena under section 1987.1, provided notice of the motion is given at least five days before the date of the production. (§ 1985.6, subd. (f)(1).) Last, by its express terms, section 1987.1 covers a motion to compel further *testimony* at a deposition held pursuant to a subpoena, and the 60-day limit—not a "reasonable time"—unquestionably applies to that kind of deposition. (§ 2025.480, subds. (a), (b).)

If we were to accept Unzipped's construction of section 1987.1, then discovery responses by *nonparties*—which must be commanded by subpoena—would be subject to an unspecified time limit on motions to compel, while discovery responses by *parties* would require a motion to compel within a specified number of days (§§ 2030.300, subd. (c), 2031.310, subd. (c), 2033.290, subd. (c)). But nonparties should not face a more harsh discovery rule than parties. (See *Monarch, supra,* 78 Cal.App.4th at pp. 1289–1290; *Calcor Space Facility, Inc. v. Superior Court* (1997) 53 Cal.App.4th 216, 225 [61 Cal.Rptr.2d 567].) And we decline to adopt a construction at odds with "legislative intent that discovery proceed . . . smoothly [and] swiftly." (*Professional Career Colleges, Magna Institute, Inc. v. Superior Court* (1989) 207 Cal.App.3d 490, 493 [255 Cal.Rptr. 5].) Thus, while section 1987.1 may be of assistance in construing the Act (see § 2020.030), it does not dictate the timing on motions to compel.

 In sum, the objections served in response to Unzipped's business records subpoenas constituted a record of a deposition. The record was complete as of the date set for the production, December 7, 2005, when Unzipped received the objections. Unzipped had 60 days thereafter, until February 6, 2006, to file a motion to compel. It waited until March 1, 2006, which rendered the motion untimely. The deadline was mandatory. (See *Sexton v. Superior Court* (1997) 58 Cal.App.4th 1403, 1408–1410 [68 Cal.Rptr.2d 708].) The order granting the motion must therefore be reversed.

## III

## DISPOSITION

The order is reversed. On remand, the trial court shall vacate its August 7, 2006 order granting the motion to compel and enter a new order denying the motion. Appellants are entitled to costs on appeal.

Rothschild, J., and Jackson, J.,[*] concurred.

---

[*]Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.