[No. A126077. First Dist., Div. Five. July 29, 2010.]

DIANE TUCKER et al., Plaintiffs and Appellants, v.
PACIFIC BELL MOBILE SERVICES et al., Defendants and Respondents.

**1550**

## COUNSEL

Franklin & Franklin, J. David Franklin and Anthony A. Ferrigno for Plaintiffs and Appellants.

Drinker Biddle & Reath, Michael J. Stortz and Beth O. Arnese for Defendants and Respondents.

## OPINION

**JONES, P. J.**—In this proposed class action, plaintiffs allege defendant cell phone providers, Pacific Bell Mobile Services and Cingular Wireless LLC (collectively defendants) violated the unfair competition law (Bus. & Prof. Code, § 17200 et seq.) by selling " 'bucket plans' " without informing consumers how the length of each telephone call would be calculated.[1]

In early 2009, defendants deposed plaintiff Julia Knapp. During the deposition, plaintiffs' counsel, J. David Franklin, wrote on a legal pad and showed it to Knapp. Franklin also instructed Knapp not to answer questions related to her standing to bring the action and refused to permit defense counsel to question Knapp about the notes on the legal pad. After the deposition, Franklin threw away the notes. Defendants moved for sanctions against plaintiffs and Franklin.

---

[1] A " 'bucket plan' gives a customer a certain number of minutes of use per month" for a monthly rate. (See *Ball v. GTE Mobilnet of California* (2000) 81 Cal.App.4th 529, 535–536 [96 Cal.Rptr.2d 801].) Plaintiffs in this San Mateo action filed a similar class action complaint against AT&T Wireless Services in Orange County Superior Court, *Tucker v. AT&T Wireless Services,* No. 03CC14707. We refer to that case as the Orange County action.

The trial court granted the motion in part and imposed monetary sanctions in the amount of $7,500 pursuant to Code of Civil Procedure section 2023.030.[2] The court determined Franklin had coached Knapp on the "very critical issue [of] standing" and therefore abused the discovery process during the deposition. The court's order stated: "Defendants' motion is granted as to Defendants' request that they be awarded their costs in the amount of $7,500.00 incurred in: (1) further deposing Plaintiff Julie Knapp as to her review of Mr. Franklin's notebook and any questions that Mr. Franklin instructed her not to answer that were not subject to any privilege; and (2) bringing this motion pursuant to Section 2023.030(a). . . ."[3]

Plaintiffs appeal. They contend (1) the motion was "not properly brought"; (2) defense counsel committed misconduct and made "false representations" to "influence the court to grant [the] motion for sanctions"; (3) Franklin properly instructed Knapp not to answer on the basis of the attorney-client privilege; (4) Franklin did not knowingly destroy evidence; and (5) the court erred in awarding sanctions "for the purpose of re-deposing" Knapp.

We conclude the court did not have the authority to award sanctions for "further deposing Plaintiff Julie Knapp" because defendants had not "incurred" those expenses within the meaning of section 2023.030, subdivision (a). Accordingly, we reverse the portion of the court's order that awards monetary sanctions related to anticipated costs of a future deposition. In all other respects, we affirm the sanction award.[4]

## FACTUAL AND PROCEDURAL BACKGROUND

In the operative fourth amended complaint, plaintiffs Knapp, Angela Rel, and Monica Zoe Hodge alleged, on behalf of a class of similarly situated people, that defendants violated the unfair competition law by "making false and deceptive representations in the promotion, marketing and sale of airtime

---

[2] Unless otherwise noted, all further statutory references are to the Code of Civil Procedure. Section 2023.030, subdivision (a) provides in relevant part, "[t]he court may impose a monetary sanction ordering that one engaging in the misuse of the discovery process, or any attorney advising that conduct, or both[,] pay the reasonable expenses, including attorney's fees, incurred by anyone as a result of that conduct." Section 2023.010 describes certain conduct—including failing to respond to an authorized method of discovery, making unmeritorious objections to discovery, and providing evasive responses to discovery—as misuses of the discovery process. The list is not exclusive. (§ 2023.010 ["[m]isuses of the discovery process include, but are not limited to, the following . . ."].)

[3] The order granting the motion did not specify against whom the sanctions were imposed. At oral argument, Franklin stated any sanctions should be imposed against him and not his clients.

[4] We issued a notice pursuant to Rules of Court, rule 8.276(c) that we were considering imposing sanctions on plaintiffs. We decline to award sanctions on our own motion.

minutes to their subscribers and prospective subscribers." Among other things, plaintiffs claimed defendants sold "bucket plans" without disclosing "that the number of airtime minutes actually available as conversation minutes . . . are 25% less than what is represented to subscribers and potential subscribers." Plaintiffs sought damages, restitution, and injunctive relief.

*Knapp's Deposition*

Defendants deposed Knapp in January 2009. The parties stipulated that Knapp's deposition could be used in the Orange County action and in the case pending in San Mateo Superior Court. Plaintiffs' counsel, Franklin, sat next to Knapp during the deposition. Defendants' attorney, Michael Stortz, began the deposition by asking Knapp questions about her standing under Proposition 64 in the Orange County action. She answered those questions. When Stortz started to question Knapp about the allegations in the San Mateo complaint, the following exchange occurred:

"Q: Okay. And I'm going to go through the same general set of questions that we had on the complaint in the other action [the Orange County action]. . . . [L]et me ask you: You look like you're reviewing Mr. Franklin's notepad, and I want to focus your attention that if you need to review his notepad, by all means you should feel free. Is that fair? I—I am entitled to get your testimony—

"A: Yes.

"Q: —without any, you know, suggestion from your counsel. Is that clear?

"A: Uh-huh.

"Q: Okay. So I'd ask you to direct your attention to me. I mean, am I misstating? Were you looking at Mr. Franklin's notepad?

"A: Yeah. Just for a second.

"Q: What were you reading there?

"Mr. Franklin: This is privileged information. Do not answer that. Attorney-client privilege.

"Mr. Stortz: Well—

"Mr. Franklin: Don't answer the question.

"By Mr. Stortz:

"Q: Were you reading something off of Mr. Franklin's notepad?

"A: I'm not supposed to answer the question.

"By Mr. Stortz:

"Q: Were you reading something off of Mr. Franklin's notepad?

"Mr. Franklin: Don't answer the question.

"Q: Are you going to follow your counsel's instruction not to answer the question?

"A: Yes.

"Q: Okay. Do you think it's appropriate for you to be reading something off of Mr. Franklin's notepad?

"Mr. Franklin: It's not up to her to determine that. Don't answer that question either. That's a ridiculous question.

"Q: Are you going to follow your counsel's instruction not to answer?

"A: Yes.

"Q: Okay. You understand that I'm entitled to your testimony here today—

"A: Yes.

"Q: —without any testimony that is provided by your counsel, correct?

"Mr. Franklin: Don't answer that question either. That's not accurate.

"By Mr. Stortz:

"Q: Is the testimony that you've provided so far today entirely your own testimony, not the testimony of your counsel?

"A: My testimony.

"Q: Okay. And I'm going to ask you a series of questions going forward. You understand that I'm entitled to your testimony, not testimony provided by your counsel. [¶] Do you understand that?

"A: Uh-huh, yes.

"Q: Okay, if at any point—

"Mr. Franklin: Well, I happen to disagree with you, but you can make your—you can make your record if you want.

"By Mr. Stortz:

"Q: If at—if at any point in the questions that are going to follow, there is any suggestion that you're providing me any other than your testimony based on your understanding as—and that you're providing testimony provided to you by your counsel, I will adjourn the deposition. [¶] Do you understand that?

"A: Uh-huh.

"Q: Thank you.

"Mr. Franklin: And if he has to adjourn the deposition, so be it. Okay. We're not going to be intimidated here by you coming over the table and making all sorts of threats. So if you have questions to ask, ask them.

"Mr. Stortz: In the number of years I've been doing this, I have never had a witness—I have never even seen a suggestion of a witness reviewing, while a question is being framed, material written by counsel for that witness.

"Mr. Franklin: I suggest maybe you need more seasoning. Maybe you haven't been a lawyer long enough.

"By Mr. Stortz:

"Q: Is that—is that going to happen when I ask you those questions?

"Mr. Franklin: Don't answer the question. It has nothing to do with this deposition. It's irrelevant. Don't answer it.

"Q: Did you see this December 2007 complaint before it was filed with the court?

"Mr. Franklin: That's been asked and answered. Don't answer it.

"By Mr. Stortz:

"Q: Excuse me, the December 2006 complaint.

"Mr. Franklin: It's been asked and answered. Don't answer it again.

"Mr. Stortz: The question previously, Counsel, when you weren't writing notes to your client, the question that I was asking previously was directed to the complaint that you filed in the other action [the Orange County action]. This is the question—

"Mr. Franklin: You asked her about both complaints back at that time, at the same time, even though she was focusing on the AT&T component. She needs a break.

"(The witness exits the deposition room.)

"By Mr. Stortz:

"Q: Ms. Knapp, you just took a break. Did you review any written materials at any time during that—that break?

"A: No.

"Q: You did not review any materials?

"A: I did not review any materials.

"Q: Your counsel is sitting to your left, Mr. Franklin. He's holding a legal pad, correct?

"A: Correct.

"Q: And that's open to a page in a legal pad.

"Mr. Franklin: Don't ans—object. Don't answer the question. It's absolutely irrelevant.

"By Mr. Stortz:

"Q: Are you going to follow his instructions not to answer?

"A: Yes.

"Q: Did you review any of the words written on top of that legal pad—

"Mr. Franklin: Obj—

"By Mr. Stortz:

"Q: —at any point during your testimony or appearance here today for deposition?

"Mr. Franklin: Objection. Irrelevant. Don't answer the question. It also invades the attorney-client privilege.

"By Mr. Stortz:

"Q: Are you going to follow counsel's instruction not to—

"A: Yes.

"Q: —to answer?

"Mr. Stortz: Let's take a break. I'm going to try to call the judge."

After a brief break, Stortz resumed questioning:

"Q: I'm going to ask you, when I'm asking you questions, to review the exhibit or my questions as you hear them put to you. If you need to communicate with Mr. Franklin, I'll ask you to take a break to do that. Is that fair?

"A: Yes.

"Q: If you want to review what's on Mr. Franklin's pad, I'd ask you to take a break and do that with Mr. Franklin or without. Is that fair?

"A: Yes.

"Q: Can we agree that you won't review what's on Mr. Franklin's legal pad while I'm asking you questions or while you're answering them while you're sitting in that witness chair? Is that fair? Is that fair, Ms. Knapp?

"A: Yes."

Stortz then resumed questioning about the allegations in the complaint. Franklin instructed Knapp not to answer those questions because they called for a legal conclusion or concerned the "merits" of plaintiffs' claims.

*Defendants' Attempt to Meet and Confer*

Knapp's deposition ended just before 4:00 p.m. on January 20, 2009. At 6:00 p.m., Stortz e-mailed and faxed Franklin a letter demanding he "maintain and not otherwise alter or destroy the notepad you had in today's deposition. . . ." About two weeks later, on February 2, 2009, Stortz wrote Franklin to meet and confer regarding Franklin's "conduct" at Knapp's deposition. Stortz explained that Franklin had written notes on his legal pad during the deposition, and "pushed the pad to the witness during [the] deposition examination. Taking your hints, Ms. Knapp reviewed your handwritten note, and continued to do so as I was framing questions. These questions went directly to the core allegations of her Complaint in the *Rel* action. Your blatant coaching of the witness was impermissible under any recognized standard of professional conduct." Stortz asked plaintiffs to stipulate to the appointment of a discovery referee, to dismiss Knapp as a class representative, and to reimburse defendants for the costs and fees incurred in deposing Knapp. Franklin responded with the following: "As General McAuliffe stated to the Germans at Bastogne in December, 1944: 'Nuts!' "

The parties appeared at a case management conference on February 9, 2009. At the conference, Stortz described the deposition and told the court Franklin showed Knapp a handwritten note while Stortz was "framing a question." After hearing a response from plaintiffs' counsel, the court explained that it wanted plaintiffs' counsel to "understand that whatever Mr. Franklin wrote out on that piece of paper is not privileged, and it should be subject to disclosure and discovery." The court stated Stortz was "engaging in [a] highly appropriate and directly relevant" area of inquiry when Franklin interfered with the questioning.

On February 16, 2009, Franklin provided a more formal response to Stortz's February 2, 2009 letter. Franklin stated that he "discarded" the "handwritten notes and 'doodles' " that he made on his legal pad immediately after Knapp's deposition ended. "Therefore, those handwritten notes and 'doodles' no longer exist."

*Defendants' Motion for Sanctions*

In May 2009, defendants moved for sanctions against plaintiffs and Franklin pursuant to section 2023.030. Defendants claimed Franklin and

Knapp "committed egregious misconduct" at the deposition and that Franklin "committed further misconduct after [the] deposition." Defendants claimed they were entitled to sanctions because Franklin "obstructed basic discovery" by "coaching Ms. Knapp, and then instructing the witness not to answer on the core allegations of her claims." According to defendants, Franklin's conduct was a "blatant and egregious" misuse of the discovery process in violation of section 2023.030.

Among other things, defendants sought costs and fees incurred with deposing Knapp and with bringing the motion for sanctions. In a declaration filed in support of the motion, Stortz averred his hourly rate was $510 and that he spent "well over ten hours in connection with preparing and deposition [*sic*] Ms. Knapp, and in addressing the misconduct that occurred at deposition." Stortz continued, "Additional amounts will be incurred in preparing reply papers and in arguing the motion. Defendants seek a portion, but not less than $5,000.00, of the amounts incurred as a result of such misconduct, as a monetary sanction under the Discovery Code."

In opposition to the motion, plaintiffs argued defendants were not entitled to sanctions. Plaintiffs claimed Stortz was "being untruthful" when he claimed he "was framing his question to plaintiff Knapp at the time she was glancing at [Franklin's] legal pad." According to plaintiffs, Knapp's deposition transcript "clearly established that there was no question pending at the time plaintiff Knapp glanced at [Franklin's] legal pad." Plaintiffs also accused defense counsel of attempting to mislead the court. In his declaration, Franklin denied writing anything on the legal pad "which suggested the answer to any question posed" during the deposition. He also claimed the note was a privileged communication with Knapp. Finally, plaintiffs claimed the notes Franklin made on the legal pad were privileged and that Franklin did not "knowingly destroy evidence when he threw away . . . the notes" after the deposition.

In support of defendants' reply, Stortz averred defendants "have incurred well in excess of over $7,500.00 in taking the deposition of Ms. Knapp, and addressing in meet and confer and by way of this Motion the misconduct that occurred at that deposition."

At the hearing on the motion, the court indicated it was "very concerned" that Franklin's conduct was "inappropriate" and that it appeared to be "coaching the witness in terms of this very critical issue of standing." The court rejected Franklin's version of what happened at the deposition. It explained, "putting a note in front of a witness during a deposition and then

telling the witness not to say what it is, it certainly has the objective appearance of being improper coaching."

The court granted the motion in part and sanctioned Franklin.[5] The order stated: "Defendants' motion is granted as to Defendants' request that they be awarded their costs in the amount of $7,500.00 incurred in: (1) further deposing Plaintiff Julia Knapp as to her review of Mr. Franklin's notebook and any questions that Mr. Franklin instructed her not to answer that were not subject to any privilege; and (2) bringing this motion pursuant to . . . Section 2023.030(a). The Court further orders that Plaintiffs' counsel Mr. Ferrigno attend this further deposition of Ms. Knapp . . . in lieu of Mr. Franklin."

## DISCUSSION

A party may appeal from "an order directing payment of monetary sanctions by a party or an attorney for a party if the amount exceeds five thousand dollars ($5,000)." (§ 904.1, subd. (a)(12); see *Rail-Transport Employees Assn. v. Union Pacific Motor Freight* (1996) 46 Cal.App.4th 469, 475 [54 Cal.Rptr.2d 713].)

### *The San Mateo Court Had Jurisdiction to Rule on Defendants' Motion for Sanctions*

As noted above, the parties stipulated that Knapp's deposition could be used in the Orange County action and in the case pending in San Mateo Superior Court. The parties did not agree, however, that the Orange County Superior Court would have exclusive jurisdiction to deal with discovery issues. After the deposition, defendants moved for sanctions in the Orange County action. The court denied the motion without prejudice.[6]

Plaintiffs contend the order awarding sanctions must be reversed because the San Mateo Superior Court lacked subject matter jurisdiction to "hear and decide the same exact motion for sanctions that had previously been made by defendants" in the Orange County action. Their argument is somewhat difficult to follow, but plaintiffs seem to argue section 1008 prohibited

---

[5] The court denied defendants' request for the appointment of a discovery referee. The court also denied defendants' request to strike Knapp's putative class claims and defendants' request to remove Franklin as class counsel.

[6] Defendants' motion for sanctions in the Orange County action is not part of the record on appeal. Plaintiffs do not contend collateral estoppel barred defendants' second motion for sanctions.

defendants from moving for sanctions in the San Mateo case after their motion for sanctions in the Orange County action was denied.

■ Plaintiffs are wrong. Section 1008 provides "procedures for applications to reconsider any previous interim court order." (*Le Francois v. Goel* (2005) 35 Cal.4th 1094, 1098 [29 Cal.Rptr.3d 249, 112 P.3d 636] (*Goel*); see 6 Witkin, Cal. Procedure (5th ed. 2008) Proceedings Without Trial, §§ 46, 53, pp. 468, 478.) For example, section 1008, subdivision (a) provides that a party affected by an order may apply for reconsideration of that order based on "new or different facts, circumstances, or law." Section 1008, subdivision (b) governs subsequent applications for the same order made in the same case. Pursuant to section 1008, subdivision (b), a party who made an application for an order that was refused may make another application for the same order "upon new or different facts, circumstances, or law."

■ Section 1008 " 'is designed to conserve the court's resources by constraining litigants who would attempt to bring the same motion over and over' " in the same court. (*Goel, supra*, 35 Cal.4th at p. 1100.) But section 1008 does not restrict a party's ability to bring a similar motion in a *different* case. Here, defendants were not seeking reconsideration of the denial of their motion in the Orange County action. They filed a motion for sanctions in a different case: the one pending in San Mateo Superior Court. As a result, plaintiffs have not demonstrated the court lacked jurisdiction to rule on defendants' motion for sanctions in the San Mateo action.

*The Court Did Not Err in Determining Defendants Were Entitled to Monetary Sanctions*

"We review discovery orders for an abuse of discretion. [Citation.] Sanction orders are 'subject to reversal only for arbitrary, capricious or whimsical action.' [Citations.]" (*Liberty Mutual Fire Ins. Co. v. LcL Administrators, Inc.* (2008) 163 Cal.App.4th 1093, 1102 [78 Cal.Rptr.3d 200]; see *Britts v. Superior Court* (2006) 145 Cal.App.4th 1112, 1123 [52 Cal.Rptr.3d 185] ["abuse of discretion standard of review ordinarily applies . . . to review of an order imposing discovery sanctions for discovery misuse"].)

Plaintiffs do not contend the court abused its discretion by granting the motion for sanctions. Nor do plaintiffs claim in their opening brief the court erred by concluding Franklin coached Knapp during her deposition. Similarly, plaintiffs do not argue the court improperly concluded coaching Knapp and instructing her not to answer certain questions was a discovery abuse within the meaning of sections 2023.010 and 2023.030.

Instead, plaintiffs argue defendants' motion was "not properly brought" as a motion for sanctions because "the motion in fact was one to preclude class certification." Plaintiffs' contention is meritless. Defendants moved for sanctions pursuant to section 2023.030, which authorizes the court to impose sanctions for the misuse of the discovery process. Defendants claimed Franklin "obstructed basic discovery" by coaching Knapp on and instructing her not to answer questions pertaining to the "core allegations of her claims." They also contended Franklin "refused any discovery of the contents of the notepad." Defendants asked the court to award monetary sanctions, remove Franklin as class counsel, appoint a discovery referee, and strike plaintiffs' class claims. That defendants also sought relief in addition to monetary sanctions does not somehow transform the motion for sanctions into a motion to deny class certification.

■ Plaintiffs also suggest the court should have denied defendants' motion because they did not move to compel deposition responses before moving for sanctions. Plaintiffs rely on section 2025.480, which provides in relevant part that "[i]f a deponent fails to answer any question [during a deposition] . . . the party seeking discovery *may* move the court for an order compelling that answer" within a specified time period. (§ 2025.480, subds. (a), (b), italics added.) Section 2025.480 does not assist plaintiffs because, on its face, it does not require a party to move to compel answers before seeking monetary sanctions pursuant to section 2023.030. ■ The use of the word "may" denotes a discretionary choice. (*Sierra Club v. San Joaquin Local Agency Formation Com.* (1999) 21 Cal.4th 489, 499 [87 Cal.Rptr.2d 702, 981 P.2d 543] ["the word 'may' . . . does not mean 'must' or 'shall' "].) Neither *Unzipped Apparel, LLC v. Bader* (2007) 156 Cal.App.4th 123, 126 [67 Cal.Rptr.3d 111] (*Unzipped*), nor *Saxena v. Goffney* (2008) 159 Cal.App.4th 316, 334 [71 Cal.Rptr.3d 469] (*Saxena*) demonstrates otherwise. In *Unzipped*, the court held that the 60-day time limit for motions to compel applied to a motion to compel compliance with a subpoena for business records. (*Unzipped, supra*, at p. 136.) *Saxena* held that where the trial court has not issued an order compelling a response or further response to an interrogatory, an evidence sanction may be imposed only where the answer to the interrogatory is willfully false. (*Saxena, supra*, at p. 334.)

Next, plaintiffs argue the order should be reversed because defense counsel made false representations to the court which apparently were "designed to improperly influence the court to grant [defendants'] motion. . . ." Plaintiffs do not cite any authority to support this claim, and they rehash the argument they made in the trial court wherein they claimed Stortz mischaracterized the

events at the deposition and lied to the court. The trial court rejected this argument and sanctioned plaintiffs for abusing the discovery process. It determined Franklin coached Knapp when he put a note in front of her and told her not to divulge the contents of the note. Substantial evidence supports the trial court's finding and we decline to weigh the evidence or resolve conflicts in the evidence. "It is the exclusive function of the trial court to weight the evidence, resolve conflicts and determine the credibility of witnesses [citation] and if its interpretation . . . is reasonable, a reviewing court will not disturb the trial court's determination in the matter unless an abuse of discretion is clearly shown [citation]." (*Estate of Desmond* (1963) 223 Cal.App.2d 211, 215 [35 Cal.Rptr. 737].)

Third, plaintiffs argue the note Franklin wrote on his legal pad during the deposition "was protected from disclosure by the attorney-client privilege, notwithstanding Evidence Code section 771." Even if we assume for the sake of argument that plaintiffs are correct, their argument fails. They have not established the court erred by concluding Franklin coached Knapp or that the court abused its discretion by granting defendants' motion for sanctions. Plaintiffs' next contention—that Franklin did not knowingly destroy evidence when he threw his notes away after the deposition—is puzzling for several reasons. First, the court did not impose sanctions for spoliation of evidence, but rather for coaching Knapp during the deposition. Second, plaintiffs provide a detailed description of the circumstances surrounding the disposal of the notes, but they do not contend the court abused its discretion by granting the motion for sanctions, nor do they cite any authority to support their "argument."

Based on the foregoing, the trial court acted well within its discretion in awarding sanctions against Franklin.

*The Court Erred in Awarding Sanctions for the Cost of a Future Deposition*

As stated above, the court awarded defendants monetary sanctions in the amount of $7,500 for "further deposing Plaintiff Julia Knapp as to her review of Mr. Franklin's notebook and any questions that Mr. Franklin instructed her not to answer that were not subject to any privilege" and for bringing the motion for sanctions. Plaintiffs' final argument is the court erred by awarding sanctions to defendants "for the purpose of re-deposing Plaintiff Knapp." Plaintiffs seem to contend the court could not award defendants the costs of "further deposing" Knapp because defendants had not yet incurred those expenses.

■ As stated above, "section 2023.030, subdivision (a) authorizes the trial court to impose an amount representing 'the reasonable expenses, including attorney's fees, incurred by anyone as a result' of a party's misuse of the discovery process." (*Parker v. Wolters Kluwer United States, Inc.* (2007) 149 Cal.App.4th 285, 294 [57 Cal.Rptr.3d 18]; see § 2023.030, subd. (a) [trial court may award "the reasonable expenses, including attorney's fees, incurred by anyone as a result" of discovery misconduct].) The statute does not define "incurred."

One court, however, has considered the meaning of the word "incur" in a somewhat similar context. (*Argaman v. Ratan* (1999) 73 Cal.App.4th 1173, 1177 [86 Cal.Rptr.2d 917] (*Ratan*).) In *Ratan*, the court determined that a self-represented attorney was not entitled to attorney fees as a discovery sanction. The court reasoned that the common meaning of " '[t]o "incur" a fee . . . is to "become liable" for it . . . i.e., to become obligated to *pay* it' " and that an attorney litigating in propria persona does not "incur" compensation for his time. (*Ratan, supra,* at p. 1177, citation omitted, quoting Webster's New Internat. Dict. (3d ed. 1961) p. 1146.)

■ Here, the use of the past tense—"incurred"—in section 2023.030 suggests the individual seeking sanctions must have already become liable for those expenses before those expenses can be awarded as sanctions. Our conclusion finds support in *Johnson v. Superior Court* (1968) 258 Cal.App.2d 829, 840 [66 Cal.Rptr. 134] (*Johnson*). There, the defendant was served with a subpoena to produce documents pursuant to section 1985, which required a witness to appear and " 'bring with him any books, documents, or other things under his control which he is bound by law to produce in evidence.' " (*Johnson, supra,* at p. 835.) The defendant appeared for his deposition but refused to produce the documents described in the subpoena. (*Id.* at p. 833.)

The plaintiff moved for an order pursuant to former section 2034[7] compelling the defendant to answer questions he had refused to answer at his

---

[7] Former section 2034, subdivision (a) in effect in 1968 governed the consequences of a deponent's refusal to answer questions during a deposition. Former section 2034, subdivision (a) authorized a party to move for an order compelling a witness to answer questions at his or her deposition or for an order requiring the witness to produce documents at the deposition. (Former § 2034, subd. (a); Stats. 1961, ch. 496, § 3, p. 1592.) That statute provided: "If the motion is granted and if the court finds that the refusal was without substantial justification the court may require the refusing party or deponent and the party or attorney advising the refusal or either of them to pay to the examining party the amount of the reasonable expenses *incurred* in obtaining the order including reasonable attorney's fees." (*Ibid.,* italics added.)

deposition and forcing him to produce the records described in the subpoena. The plaintiff also sought "reasonable costs and attorney's fees, incurred because of this proceeding . . . ." (*Johnson, supra*, 258 Cal.App.2d at p. 833, fn. 2.) The court granted the motion and ordered the defendant to produce the items at a " 'further taking of his deposition.' " The court also ordered the defendant to pay the costs of "taking said deposition past and future." (*Id.* at p. 833.)

The appellate court vacated the order for several reasons. (*Johnson, supra*, 258 Cal.App.2d at p. 837.) At the end of its opinion, the appellate court "pointed out" that former section 2034, subdivision (a) limited sanctions to "the 'reasonable expenses incurred [by the successful party] in obtaining the order' compelling discovery." (*Johnson, supra*, at p. 840, original brackets.) The *Johnson* court concluded that former section 2034, subdivision (a) did not authorize the trial court to award the costs of a future deposition. As the court explained, the trial court "not only ordered [the defendant] to pay plaintiff's costs in taking the deposition which was the subject of its motion for relief under section 2034, subdivision (a), but also ordered him to pay plaintiff's costs in taking his deposition in the future. In doing so, the court far exceeded its powers as prescribed in that section." (*Johnson, supra*, at p. 840.)

■ Defendants make a halfhearted attempt to distinguish *Johnson* in a footnote of their brief. They argue *Johnson* is distinguishable because the court there analyzed a sanctions order under section 2034 rather than section 2023.030, the "relevant statute here." To be sure, the *Johnson* court considered sanctions awarded pursuant to former section 2034 rather than section 2023.030, but the court's rationale applies here. The word "incurred" appears in both former section 2034, subdivision (a) and in section 2023.030. A trial court does not have the authority to award the costs of a future deposition as a discovery sanction where the individual has not yet "incurred" those costs.

## DISPOSITION

The order is reversed insofar as it awards monetary sanctions for costs related to the taking of a future deposition. The matter is reversed and remanded. On remand, the court shall recalculate the amount of sanctions awarded to defendants and shall limit those sanctions to "reasonable expenses . . . incurred" by defendants as a result of Franklin's abuse of the discovery process. (§ 2023.030, subd. (a).) If applicable, the court shall report

the sanctions to the State Bar pursuant to Business and Professions Code section 6086.7, subdivision (a)(3) and Franklin shall report the sanctions to the State Bar pursuant to Business and Professions Code section 6068, subdivision ($o$)(3). In all other respects we affirm the order. Each party to bear its own costs on appeal.

Simons, J., and Bruiniers, J., concurred.