Filed 6/24/24  Estate of Ambrose-Gordon CA1/5

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| Estate of LENNICE KATHERINE AMBROSE-GORDON, Deceased. | |
| ROBERT L. GORDON,<br>　　　Petitioner and Respondent,<br>v.<br><br>TRICIA CHANDLER,<br>　　　Objector and Appellant. | A169189<br><br>(Sonoma County Super. Ct. No. SPR-097246) |
| TRICIA CHANDLER,<br>　　　Petitioner and Appellant,<br>v.<br><br>ROBERT L. GORDON,<br>　　　Objector and Respondent. | (Sonoma County Super. Ct. No. SPR-097310) |

Tricia Chandler appeals from a trial court order sanctioning her and her attorney for failing to adequately meet and confer before moving to compel discovery.  (Code Civ. Proc., § 2023.020.)[1]  We affirm.

## BACKGROUND

After Lennice Katherine Ambrose-Gordon died, her widower, Robert L. Gordon, filed a spousal property petition.

---

[1] Further statutory references are to the Code of Civil Procedure.

Gordon and Chandler, Ambrose-Gordon's daughter, then filed dueling petitions to administer her estate. The trial court consolidated the matters and scheduled a hearing for May 12, 2023.

Chandler served requests for production of documents, interrogatories, and requests for admission. Beginning on April 12, 2023, her counsel Peter Singler (in his words) sent three emails "reminding [Gordon's counsel] of the upcoming deadlines [to respond to the discovery] and stating [Singler] could not grant any extensions due to the pending hearing date." Nevertheless, the parties agreed to extend the deadline for discovery responses and to continue the scheduled hearing to July 14, 2023.

Gordon served discovery responses and produced over 900 pages of documents. The responses were verified by Gordon and signed by his counsel Anthony Bentivegna. After reviewing them, Singler "tried calling" Gordon's lead counsel Roy Johnston and emailed him at nearly 4:00 p.m. on a Friday, stating he was "disappointed" with the discovery responses and asking if Johnston could meet and confer "Monday." Bentivegna was not included on this email, but it was forwarded to him a few days later and he responded by offering another time to meet and confer. Singler immediately replied, "I had not heard anything and was preparing a meet & confer letter. I will finish that up. You can review and then we can see if you want to discuss."

Over a week later—again, on a Friday afternoon—Singler emailed Johnston and Bentivegna his meet and confer letter. Singler noted he was "happy to discuss" the discovery issues detailed in the letter but did not attempt to schedule a discussion. Rather, he announced "two paths": either Gordon could provide further discovery responses by 4:00 p.m. on the following Friday, June 23, 2023, or the parties could explore a settlement providing that Chandler administer the estate. Within an hour, Bentivegna responded that he would be on vacation from June 21

2

through July 8 and would need time to review Singler's meet and confer letter with his client. Bentivegna offered to extend the deadline for any motion to compel. Singler replied immediately. Ignoring the proffered extension, he directed, "Please have Mr. Johnson [*sic*] address then. The hearing date is July 14, and I have grave concerns about the estate assets." Singler did not seek an agreement to continue the July hearing at this time.

A week passed without further communication on this issue. Then, at 4:09 p.m. on June 23, 2023—after Bentivegna left for vacation—Singler emailed Johnston and Bentivegna: "You have neither supplemented responses, nor even attempted to meet and confer as required. We will file our motion to compel and for sanctions early next week." Singler noted that the hearing on the motion to compel likely would not be scheduled before the July hearing on the petitions and requested a stipulation to continue the July hearing. But he did not offer to meet and confer or to defer the motion to compel.

Receiving no reply, Singler secured a continuance of the July hearing by ex parte application. He filed a motion to compel the production of documents and further responses to interrogatories while Bentivegna remained on vacation. The motion included a request for over $45,000 in monetary sanctions against Bentivegna, Johnston, and their client.

After Bentivegna returned, he served amended discovery responses and produced additional documents. Singler and Bentivegna met and conferred by telephone; according to Bentivegna, Singler refused to withdraw the motion to compel unless Bentivegna agreed to pay $45,000 in monetary sanctions. After this call, Singler sent a meet and confer letter stating, "[W]e are not going to drop the motion. The limited amended responses did not cure the inadequacies. Mr. Bentivegna also stated that he would not consider sanctions." Singler filed a reply brief increasing the request for sanctions to $67,250. The request

3

encompassed over 80 hours of Singler's time—billed at $750 per hour—for meeting and conferring and document review, among other tasks.

The trial court denied the motion to compel and sanctioned Singler and his client for failing to meet and confer. (§ 2023.020.) The order detailed several unreasonable communications by Singler warranting sanctions. These included his June 2, 2023 email "sent late on a Friday seeking a meet and confer the following Monday"; his rejection of Bentivegna's offer to meet and confer live so that he could finish a letter that was not delivered for several days; and his refusal to allow Bentivegna time to review the letter with his client and to accommodate his vacation. After discussing this sanctionable conduct, the court observed: "it would appear there was never any likelihood of reasonable meet and confer efforts given [Singler's] statement in his April 12, 2023, email: 'We simply have no room to grant any extensions, or to try to meet and confer to work anything out.' " The court recognized that this statement "was in the context of an upcoming deadline," but reasoned it was "also consistent with [Singler's] later perfunctory meet and confer efforts."

In sum, the trial court found that while Singler's meet and confer letter "clearly communicated his positions," Singler did not give opposing counsel a reasonable opportunity to respond, which likely would have been fruitful since Bentivegna supplemented the responses upon his return. The court imposed $9,495 in sanctions: around 21 hours of Bentivegna's time billed at $450 per hour.

## DISCUSSION

Chandler claims the trial court "erroneously relied on [the] single sentence" from Singler's April 12 email to award sanctions "without considering [the statement's] context." This argument misconstrues the record and the trial court's well-reasoned order.

4

As we explain, the court was well within its discretion to sanction Chandler and her counsel Singler.[2]

## A.

Whatever the outcome of a discovery motion, the trial court "shall impose a monetary sanction ordering that any party or attorney who fails to confer as required pay the reasonable expenses, including attorney's fees, incurred by anyone as a result."[3]  (§ 2023.020.)  In this context, the trial court has broad discretion, and we will reverse only if its order exceeded the bounds of reason.  (*American Home Assurance Co. v. Société Commerciale Toutélectric* (2002) 104 Cal.App.4th 406, 435.)  We review the court's factual determinations under the substantial evidence standard and defer to its weighing of the evidence, resolution of evidentiary conflicts, and credibility determinations.  (*Tucker v. Pacific Bell Mobile Services* (2010) 186 Cal.App.4th 1548, 1562.)

Where meet and confer is required, the moving party must show "a reasonable and good faith attempt at an informal resolution of each issue presented by the motion."  (§ 2016.040.)  This necessitates a serious attempt to negotiate and resolve the

---

[2] In addition to seeking reversal of the sanctions award, Chandler asks us to vacate the denial of her motion to compel and remand the matter for the trial court to consider issuing sanctions against Gordon and his counsel.  These requests are unsupported by reasoned argument or citation to authority and are thus forfeited.  (*Vitug v. Alameda Point Storage, Inc.* (2010) 187 Cal.App.4th 407, 412.)

[3] As the trial court observed, section 2030.300, subdivision (b) requires a party who moves to compel further responses to interrogatories to provide a declaration showing adequate efforts to meet and confer.  Section 2031.310, subdivision (b) establishes the same requirement for a party who moves to compel further responses to requests for production.

issues. (*Clement v. Alegre* (2009) 177 Cal.App.4th 1277, 1294.) It entails talking the matter over, not bickering with opposing counsel or merely trying to persuade them they are wrong. (*Id.*, at p. 1294.) The level of effort that is reasonable depends on the circumstances and the prospects for success. (*Ibid.*) Those are matters we leave to the trial court's discretion. (*Ibid.*; *Obregon v. Superior Court* (1998) 67 Cal.App.4th 424, 432–433 (*Obregon*).)

## B.

The trial court did not abuse its discretion by concluding that Singler failed to make the deliberative, serious effort required by the discovery statutes. Singler failed to meaningfully engage with Bentivegna, the attorney who signed Gordon's discovery responses and replied to Singler's initial overture. Instead, he insisted on preparing a formal meet and confer letter and made no effort to schedule a live conversation even after it was delivered. When Bentivegna immediately reached out for more time to respond, Singler demanded to speak to lead counsel Johnston even though Bentivegna had prepared the discovery responses.

Singler also ignored Bentivegna's offer to extend the deadline for any motion to compel and did not seek his agreement to continue the July hearing Singler claimed made discovery urgent. Rather, Singler waited until Bentivegna left for vacation to announce he was filing a motion to compel, even as he secured a continuance of the July hearing, time he could have used to narrow or resolve the issues through meet and confer. When Bentivegna returned, Singler conditioned any resolution of the motion on his payment of a large amount of sanctions—an approach much more likely to scuttle any productive discussion than facilitate it. Far from ignoring Singler's meet and confer communications as Chandler claims, the trial court discussed them in detail but found them "perfunctory."

6

Chandler contends that the trial court failed to apply the standard set forth in *Obregon*, which she calls a six-factor "test." But *Obregon* emphasized that evaluating meet and confer "involves the exercise of discretion" and merely outlined some "factors [that] can be relevant," without suggesting a court must expressly address them in every case. (*Obregon, supra*, 67 Cal.App.4th at p. 431.) Here, the trial court considered the relevant circumstances, including many of the *Obregon* factors. We must assume the trial court exercised its discretion correctly; it is Chandler's burden to demonstrate an abuse of discretion. (*Obregon,* at p. 432.) Chandler fails to make that showing here. In her analysis, she simply emphasizes different factors and urges a different view of the evidence than the trial court's. (See *id.* at p. 434 [judges have broad discretion in assessing meet and confer and their assessments do not always conform to litigants' predictions].)

## C.

Finally, Gordon seeks sanctions against Chandler and her attorneys for filing a frivolous appeal. (Cal. Rules of Court, rule 8.276(a)(1).) To be sure, Chandler has not prevailed on her appeal—and her mischaracterization of the trial court's reasoning is troubling. Still, we deny Gordon's motion because he has not demonstrated "any reasonable attorney would agree" Chandler's appeal "is totally and completely without merit." (See *In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 650.) Nor has Gordon shown Chandler maintained her appeal to harass him or cause delay. (See *ibid.*; Cal. Rules of Court, rule 8.276(a)(1).)

## DISPOSITION

The order awarding monetary sanctions against Chandler and Singler is affirmed. Gordon is entitled to his costs on appeal.

                                                        BURNS, J.

WE CONCUR:


JACKSON, P.J.
CHOU, J.


*Gordon v. Chandler (A169189)*