Filed 9/24/21  Kramer v. Dale CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| KYLE KRAMER, Plaintiff and Appellant, v. MARK A. DALE et al., Defendants and Respondents. | D077610 (Super. Ct. No. 37-2017-00003140-CU-WM-NC) |


APPEAL from an order of the Superior Court of San Diego County, Robert P. Dahlquist, Judge.  Affirmed.

Sharif Faust Lawyers, Matthew J. Faust and Khodadad D. Sharif for Plaintiff and Appellant.

Business Law Group and Joseph A. Lara for Defendants and Respondents.

Kyle Kramer appeals an order compelling him to produce supplemental discovery responses and awarding sanctions to the moving parties in the amount of $12,250 for misuse of the discovery process.  However, Kramer

only challenges the awarding of sanctions. We affirm the order because the superior court did not abuse its discretion in awarding sanctions.

FACTUAL AND PROCEDURAL BACKGROUND

Kramer initially filed this action in early 2017, and the operative pleading (the second amended petition) was filed on September 26, 2018. The second amended petition purportedly is a derivative action brought by Kramer "and other [s]hareholders" of named respondent Puracyp, Inc. The primary respondents in the suit are Mark A. Dale and Judy Raucy (together as Respondents).[1]

Kramer alleges he owns 20 percent of the common stock of Puracyp while Respondents "collectively control approximately 80% of the share of Puracyp." Kramer claims that Respondents have denied him access to corporate records. He also avers that he has not been paid per his ownership interest in Puracyp, but Respondents have paid "themselves excessive compensation, withdrawing money for personal uses and hiding [Puracyp's] income." In addition to this wrongful conduct, Kramer alleges that Respondents have not provided annual reports to shareholders, have not provided notice of shareholder meetings, named themselves the only directors of Puracyp when three directors are required, agreed to work together to deprive all other shareholders their voting and dividend rights; and pilfered Puracyp's money.

The second amended petition includes causes of action for (1) a petition to compel inspection of corporate records; (2) refusal to make distribution to petitioner shareholder; (3) breach of fiduciary duty; (4) an accounting; (5) removal of directors; and (6) declaratory relief. Kramer seeks an order requiring Respondents to make Puracyp's records available for inspection, an

---

[1] Although named as a respondent, Puracyp is not a party to this appeal.

2

accounting, and removal of Respondents as directors. Additionally, Kramer pleads for "damages in a sum to be proven at trial" as well as "punitive and exemplary damages in an amount sufficient to punish and deter" Respondents.

On November 19, 2019, Respondents served four sets of written discovery, consisting of form interrogatories, special interrogatories, requests for production, and requests for admission.[2] When Kramer served his initial responses, on or about December 23, 2018, he did not provide any substantive responses. Instead, every response to any request or interrogatory concluded with the following sentence: "Accordingly, no response is required at this time." In addition to making various other objections, each of Kramer's responses, no matter the specific request or interrogatory, contained the following objection: "Business Law Group, Inc. has not only been acting as counsel for both Puracyp, Inc. and its faithless directors, Mark Dale and Judy Raucy but also has been assisting in their attempts to cover up their bad faith actions in violation of California Rules of Professional Conduct, Rules 1.7, 1.9. A motion to disqualify Business Law Group, Inc. has been filed and it is wholly inappropriate for them to conduct discovery while this Motion is pending."

Although the subject objection claimed it was improper for Respondents to conduct discovery while a motion to disqualify counsel was pending, no

---

[2]    In the opening brief, Kramer provides an extensive history of the various disputes he has had with Respondents, including previous litigation. He also discusses earlier discovery that he served on Respondents and motions to compel related to that discovery. Because we do not find any of this history instructive to the issues before us, we eschew any further discussion of it.

3

such motion had been filed at the time Respondents propounded discovery.[3] Instead, Kramer filed a motion to disqualify Respondents' counsel on the same day he served his objection-only responses to Respondents' written discovery. In that motion, Kramer sought an order disqualifying Business Law Group, Inc. (BLG) from representing Puracyp as well as Respondents because the matter was proceeding as a shareholder derivative suit, so BLG could not represent the corporation and its directors concurrently. Kramer also argued that after the court disqualified BLG from representing Puracyp, BLG could not represent Respondents because such representation would violate the firm's duty of loyalty and confidentiality to Puracyp. Finally, Kramer insisted Respondents could not be involved in selecting a new attorney for Puracyp.

In opposing the motion to disqualify, Respondents admitted it was "likely that the Court will need to appoint new counsel for Puracyp." However, Respondents contended that the operative petition had elements of both a derivative and direct action, and Kramer had "alleged for three years that the corporation and the individual respondents are one in the same." Respondents also argued that Kramer had waived his right to disqualify BLG as to the firm's representation of Respondents. To this end, they maintained the subject motion was filed a year after the second amended petition was filed, Kramer waited nearly two months after the expiration of a stipulation

---

[3] We briefly discuss Kramer's motion to disqualify because he argues it, at least in part, provides justification for responding to all written discovery with objections only.

4

to seek settlement expired to file the disqualification motion,[4] and Kramer only filed the motion "as a flimsy excuse for [his] refusal to respond to written discovery." Although an attorney from BLG submitted a declaration detailing the amount of work he had dedicated to the instant action (including responding to and propounding discovery), there is no indication in Respondents' opposition that they were arguing Kramer waived his right to seek a disqualification of BLG simply because Kramer responded to the written discovery.

In his reply, among other arguments, Kramer insisted that he had not waived his right to seek disqualification of BLG, and he did not file the motion to interfere with Respondents' right to conduct discovery.

On January 17, 2020, the court granted Kramer's motion to disqualify in part, noting that BLG conceded that it could no longer represent Puracyp. However, the court denied the motion to the extent it sought to disqualify BLG from representing Respondents. Also, the court found that Respondents could be involved in selecting new counsel for Puracyp. There is no indication in the court's minute order that it found Kramer had waived his right to seek disqualification of BLG. Instead, the court observed that it was not persuaded on the record before it that BLG should be disqualified from representing Respondents.

On December 26, 2018, well before the disqualification motion was heard, Respondents' attorney emailed a meet and confer letter to Kramer's attorney. Although that letter discussed several of Kramer's objections, we focus here on two points of the letter. First, Respondents argued that

---

[4]     On September 25, 2019, Kramer and Respondents entered into a 45-day stipulation to try to settle the case. During that time, Kramer agreed to forgo the filing of a motion to disqualify. The stipulation expired by its own terms on November 9, 2019.

5

Kramer did not timely respond to the discovery, and, as such, all objections were waived. Consequently, Respondents' counsel demanded that Kramer "immediately serve[ ] further responses to each of the four sets of discovery **without objection**." Second, Respondent's attorney took exception to Kramer's objection based on the disqualification motion. To this end, counsel maintained that the objection was "not a cognizable objection to any method of written discovery." He also noted that the discovery was not propounded while any disqualification motion was pending. Alternatively stated, Respondents' counsel insisted the objection based on the disqualification motion was without merit and did not permit Kramer to avoid providing substantive discovery responses. At the end of the meet and confer letter, Respondents gave Kramer until January 2, 2019 to provide substantive responses.

Kramer's counsel responded to the December 26 meet and confer email later that same night. He wrote: "I will not available [*sic*] to deal with this in that time frame. Considering the pending dq [*sic*] motion against you, i [*sic*] have to assume whatever you are threatening is filed for an improper purpose."

Respondent's counsel replied about 12 minutes later, explaining that he needed the discovery because of the "looming trial date and related deadlines." Additionally, he contended that a week was sufficient time to provide supplemental responses. Kramer's counsel then informed opposing counsel that he would review the meet and confer letter and discuss its contents with him "in due course of business, but there is no reason to expedite it. Im [*sic*] on holiday and will not respond to anymore [*sic*] of this till I get back." This initial volley of written exchanges did not resolve the

6

discovery dispute. In fact, none of the subsequent exchanges addressed the issues raised in the December 26 meet and confer letter.

On January 9, 2020, Respondents appeared ex parte to request a trial continuance based on the argument that Kramer's refusal to respond to discovery effectively prohibited Respondents from bringing their intended Motion for Summary Judgment.[5] Kramer argued that the discovery should not be addressed until after the motion to disqualify was heard, but the trial court disagreed. The trial court explained that it did not view the act of Kramer responding to discovery as possibly waiving his disqualification argument. Kramer's attorney represented that the court's conclusion " 'changed everything.' "

At the ex parte hearing and shortly thereafter, Respondents' counsel communicated to Kramer's counsel that January 13, 2020 was the last day for Respondents to overnight serve their intended motion to compel, and, accordingly, Kramer would need to serve his supplemental discovery responses no later than January 10, 2020. In response, Kramer's counsel stated that he was too busy to respond to the discovery on the timetable provided by Respondents' counsel and proposed that he would provide a written response on January 21, 2020 to Respondents' December 26 meet and confer letter, to which Respondents' counsel would respond on January 28, and Kramer would provide supplemental responses by February 13. If the parties still disagreed on the discovery responses, Kramer's attorney suggested that Respondents could file a motion to compel on February 28.

---

[5] The record does not include any transcript of the January 9, 2020 ex parte hearing. The substance of that hearing is taken from declarations filed in connection with Respondents' motion to compel further discovery responses.

Respondents' counsel did not agree to the proposal, explaining that the case had been pending for three years, "discovery needs to be had," and the trial continuance did not provide him with "all the time in the world to complete discovery" before the summary judgment deadline. Thus, counsel proposed that Kramer provide supplemental discovery responses and produce documents by the end of business on January 13, if Kramer agreed to accept email service of the motion to compel. Kramer did not agree to this proposal.

On January 13, 2020, Respondents filed a motion to compel further discovery responses and deeming all requests for admission admitted. Respondents also sought monetary sanctions. In the motion, Respondents took issue with Kramer failing to respond substantively to any discovery and claimed that Kramer did not timely serve his responses and falsified the subject proofs of service. Respondents also maintained that Kramer could not object to providing substantive responses to discovery based on his motion to disqualify counsel.[6]

---

[6] Respondents additionally challenged many of Kramer's other objections to the written discovery. In the opening brief, Kramer does not argue that any of these other objections undermined the court's award of sanctions. Instead, Kramer argues that he was substantially justified in providing objection-only responses to all discovery because he was seeking to disqualify opposing counsel. Additionally, Kramer argues the court abused its discretion in impliedly finding that Respondents engaged in an adequate meet and confer process before filing their motion to compel. Nonetheless, in the respondents' brief, Respondents argue, beyond any claim made in the opening brief, that many of the other objections Kramer raised in responding to the discovery were meritless or did not relieve him of his obligation to substantively respond to discovery. Apparently, Respondents discussion of these objections was in an effort to show the court did not abuse its discretion in ordering Kramer to produce further responses. Because Kramer does not challenge that portion of the order and the superior court did not discuss or even mention these other objections in determining that sanctions were warranted, we do not discuss the other objections any further.

8

Kramer opposed Respondents' motion, arguing that Respondents did not meet and confer before filing the motion and that his discovery responses were timely served. Kramer also defended all his objections as proper and specifically argued that he did not initially provide substantive responses to discovery because he "reasonably feared that providing substantive responses and producing documents at the time would constitute as waiver of his claim for disqualification of Respondents' counsel."

Included in his opposition, Kramer pointed out that he provided supplemental responses to the form interrogatories and requests for admission on January 22, 2020,[7] supplemental responses to the requests for production two days later, and supplemental responses to special interrogatories on January 27, 2020. Along with the supplemental responses to special interrogatories, Kramer also made his initial production of documents.

In reply, Respondents withdrew their motion to compel further responses as to Special Interrogatory No. 1 only. They also maintained that many of the supplemental responses provided by Kramer after Respondents filed their motion were inadequate and not properly verified. Respondents reiterated that monetary sanctions against Kramer were appropriate.

The superior court held hearings on Respondents' discovery motion over two days (February 7 and 14, 2020) with the second hearing date devoted entirely to the issue of sanctions. On February 7, the court ordered Kramer to provide further supplemental responses to some of the interrogatories and discovery requests. Because Kramer does not take issue with any of these determinations, we do not discuss them further. That said,

_____

[7] In addition, on January 22, 2020, Kramer first responded substantively to Respondents' December 26, 2019 meet and confer letter.

9

the court did allow the parties to address the issue of sanctions at the end of the February 7 hearing and made some observations that illuminate the court's reasoning in ultimately awarding sanctions.

For example, the court disagreed with Kramer's counsel's representations that his client had "tried really hard to avoid" the discovery motion and Kramer "tried really hard to provide the information," noting "that just doesn't ring true to me where he objected to every single response to every single request." The court also explained that it did not find counsel's excuse "terribly persuasive" that he had difficulty responding to discovery based on his claim he was busy during the holidays and the first of the year because the court noted that the requests were served in November, and the responses could have been provided before the holidays. The court further observed the motion could have been avoided had Kramer "just made a good-faith effort to respond to the discovery before the holidays when it was due." To illustrate this point, the court pointed out that Kramer eventually denied all the requests for admission and could have done so when he first served his discovery responses. Finally, the court did not believe it was reasonable for Kramer's counsel to expect "a bunch of professional courtesies" from Respondents' counsel when Kramer's counsel was moving to disqualify him.

At the February 14 hearing, the court allowed Kramer's counsel to argue at length why sanctions were not appropriate. Counsel began by emphasizing that Respondents did not engage in the meet and confer process before filing the discovery motion. In response, the court questioned Kramer's counsel regarding meet and confer obligations when the responding party refuses to provide any substantive responses to the subject discovery requests when those requests include a "significant number" of "legitimate

10

discovery requests." The court also pointed out that Kramer's position seemed to be that he could merely object to every single request and interrogatory to begin the meet and confer process. The court disagreed with such an approach, explaining:

> "Well, I believe the legislature wrote the discovery statutes with the idea that discovery can and should be completely self-executed. But there's no need for any court hearings. There's no need for orders to compel that reasonable parties working in good faith should disclose everything that's reasonably asked for in a civil lawsuit. And maybe it's a matter of semantics or verbiage or maybe I'm colored by what actually happened in this case. But a lot of what you're talking about makes it sound like your side thinks it's okay to object to everything and then start to negotiate from that. It's okay to object to all discovery requests and then make it a negotiation. And then if we're negotiating so hard that the other side doesn't like our position, and they have to file a motion to compel. And if they didn't really try hard enough to negotiate with us then they lose. And that's not the way discovery is suppose[d] to work."

The court further illuminated why it was rejecting Kramer's meet and confer argument:

> "And so I totally disagree to the extent that your side has the philosophy that it's appropriate to object to everything, and then start negotiating what tidbits will be provided. And then the other side can't file a motion to compel without some extensive face-to-face meet and confer, I totally disagree with that. . . . If you're . . . dealing with somebody who's totally obstinate and you're dealing with somebody who's giving nothing but objections to reasonable requests, then it doesn't take a lot to satisfy what's a reasonable meet and confer. On the other hand, if you're dealing with somebody who has responded to the 100 requests, responded substantively to 75 of them and they're legitimate disputes as to the reasonableness of the other 25 and the parties are, you know, working informally to

11

resolve those disputes then, you know, maybe something a
little bit more is required.

"But I reject the idea that when you're dealing with a
difficult, obstinate opponent who's objected to everything, if
you have to jump through a whole bunch of hoops before
you can bring a motion to compel, so I reject that. I think a
reasonable—the statute requires a reasonable and good
faith attempt. But I am going back and look at the record
to ask myself was there a reasonable and good faith
attempt here."

After hearing additional argument from the parties, the court took the
matter under submission. Eventually the court issued a minute order,
awarding Respondents sanctions in the amount of $12,500, which the court
found "reasonable." The court explained:

"The Court is persuaded that the imposition of monetary
sanctions in this instance is appropriate. [Kramer] initially
objected to every discovery request propounded by
[R]espondents. [Kramer] made no good faith effort to
provide any substantive responses at all. After the motion
to compel was filed, [Kramer] then, for the first time,
provided some substantive responses but even those
responses are lacking in certain respects. At the Feb. 7,
2020 hearing, the Court ordered petitioner to provide
further supplemental responses. [¶] In short, in the
Court's view, [Kramer] unreasonably failed to provide even
the most basic information about [his] claims in this case."

Kramer timely appealed, challenging only the award of sanctions.

DISCUSSION

We review an order imposing discovery sanctions for abuse of discretion
and reverse only if the court's action in imposing them was arbitrary,
capricious, or whimsical. (*Van v. LanguageLine Solutions* (2017) 8
Cal.App.5th 73, 80; see *Doe v. United States Swimming, Inc.* (2011) 200
Cal.App.4th 1424, 1435 (*Doe*) [an order imposing discovery sanctions is

12

subject to reversal only for " ' "manifest abuse exceeding the bounds of reason" ' "].) We defer to the trial court's factual findings and credibility determinations by upholding them if they are supported by substantial evidence. (*Tucker v. Pacific Bell Mobile Services* (2010) 186 Cal.App.4th 1548, 1562 (*Tucker*).) The superior court has broad discretion in deciding whether to impose sanctions and in setting the amount of monetary sanctions. (*Pratt v. Union Pacific Railroad Co.* (2008) 168 Cal.App.4th 165, 183; see Code Civ. Proc., § 2030.290, subd. (c) [mandating sanctions "against any party, person, or attorney who unsuccessfully makes or oppose a motion to compel a response to interrogatories, unless it finds . . . substantial justification or that other circumstances make the imposition of sanctions unjust"].)

Where monetary sanctions are called for against "one engaging in the misuse of the discovery process, or any attorney advising that conduct, or both," the court may order them to "pay the reasonable expenses, including attorney's fees, incurred by anyone as a result of that conduct." (Code Civ. Proc., § 2023.030, subd. (a).) To avoid sanctions, the losing party must show "substantial justification," meaning he or she had reasonable grounds to believe the answer given was adequate. (*Doe*, *supra*, 200 Cal.App.4th at p. 1434.)

Here, as the superior court noted, "[t]he motion was filed because petitioner Kyle Kramer initially objected to all of [R]espondents' discovery requests and provided no substantive responses to any of the requests." Moreover, the court found that Kramer did not make a good faith effort to provide substantive responses to any of the discovery. Kramer, however, maintains that he was justified in merely objecting to the discovery responses because had he provided substantive responses, he would have possibly

13

waived his right to seek disqualification of BLG. We conclude Kramer did not have substantial justification to provide objection-only responses to all discovery served by Respondents.

As a threshold matter, if Kramer believed he had to provide objections only to the discovery or risk waiving his right to seek a disqualification of BLG, we would expect to see an objection stating as much. We do not. Instead, Kramer's objection related to the disqualification motion says nothing about waiver. The objection accuses BLG of untoward conduct: BLG "has been assisting in [Respondents'] attempts to cover up their bad faith actions in violation of California Rules of Professional Conduct, Rules 1.7, 1.9." The objection also states that it is "wholly inappropriate" for BLG to engage in discovery when a motion to disqualify the firm has been filed. Yet, Kramer brought the motion *after* Respondents propounded and served the discovery. Indeed, Kramer filed and served the disqualification motion at the same time he served his initial objection-only responses to the discovery. Thus, the portion of his objection that it was improper for BLG to engage in discovery in the face of a disqualification motion rings hollow. In fact, that scenario was manufactured by Kramer after he was served with discovery. In short, we do not read Kramer's objection based on the disqualification motion as a claim that only objections could be provided or he would waive that motion.

Further, there does not appear to be any authority that supports Kramer's position that he could waive his disqualification motion by providing substantive responses to the discovery. Kramer relies on *Antelope Valley Groundwater Cases* (2018) 30 Cal.App.5th 602 (*Antelope Valley*) and *River West, Inc. v. Nickel* (1987) l88 Cal.App.3d 1297 (*River West*), but these two cases do not provide Kramer with any help in the instant action.

14

Neither *Antelope Valley* nor *River West* stand for the proposition that a party who provides substantive discovery responses waives his or her right to seek disqualification of opposing counsel. In general, these two cases show that courts sometimes examine the moving party's delay and the prejudice to the resisting party to determine whether the moving party waived the right to seek disqualification of counsel (see *River West*, *supra*, 188 Cal.App.3d at p. 1310), or whether the moving party is estopped from seeking disqualification of counsel (see *Antelope Valley*, *supra*, 30 Cal.App.5th at p. 625, fn. 18).

Kramer does not argue *Antelope Valley* is factually analogous to his situation, but he notes that the court in that case cited to *River West* with approval in concluding that a court can find implied consent to an attorney's representation.

In *River West*, the trial court granted the defendant's motion to disqualify the plaintiffs' counsel who had represented the defendant in a substantially-related matter 30 years before. On appeal, however, the appellate court reversed the order disqualifying counsel because the defendant waited 47 months after filing an answer before it moved to disqualify counsel. During that time, plaintiffs' counsel expended a great amount of resources in the case. Accordingly, the appellate court determined that the delay in moving to disqualify was so unreasonable and the resulting prejudice so great that it justified a conclusion the defendant impliedly waived the right to disqualify the plaintiffs' attorney. (*River West*, *supra*, 188 Cal.App.3d at p. 1313.)

Kramer points out that the plaintiffs' attorney in *River West* " 'engaged in substantial discovery directed at . . . [the] defendants.' " (*River West*, *supra*, 188 Cal.App.3d at p. 1313.) Based on this language in the opinion, he

15

argues "submitting to discovery requests can be construed as an implied consent to an attorney's otherwise disqualifiable conflict of interest." We disagree that *River West* supports such an argument.

In *River West*, the plaintiffs' attorney was subject to the motion to disqualify. In analyzing the delay in bringing the disqualification motion as well as the prejudice stemming from such delay, the court looked at the amount of work the plaintiffs' attorney had done in the case.[8] (See *River West*, *supra*, 188 Cal.App.3d at p. 1313.) And some of that work included propounding and responding to discovery. (*Ibid*.) Here, Kramer argues that the amount of resources his attorney expended in this case could result in finding waiver. But Kramer's attorney was seeking to disqualify BLG. Unlike the plaintiffs' attorney in *River West*, Kramer's attorney was not the object of the disqualification motion. In this sense, Kramer is contending that we should expand the holding of *River West* to conclude that a party moving to disqualify opposing counsel must not provide substantive responses to discovery or risk waiving his right to seek disqualification. We find no justification whatsoever for such an extension of *River West*, especially on the record before us. In fact, we conclude such an extension is not even colorable under *River West*. Again, in considering the work performed and the application of that work to the issue of waiver, the court looked at the attorney who was to be disqualified not the attorney seeking disqualification. Simply put, *River West* does not support Kramer's argument here whatsoever.

Moreover, by Kramer simply providing objections only, he increased the amount of work performed by BLG because that firm had to engage in

---

[8]     Plaintiffs' counsel's efforts in the matter were considerable, consisting of over 3,000 hours of litigation effort at a cost of $387,000. (See *River West*, *supra*, 188 Cal.App.3d at p. 1313.)

additional work to obtain substantive responses from Kramer. As such, under *River West*, Kramer's initial discovery responses only increased the likelihood a court would conclude that his delay in moving to disqualify was so unreasonable and the resulting prejudice so great that he impliedly waived the right to disqualify BLG. (See *River West*, *supra*, 188 Cal.App.3d at p. 1313.)

Additionally, the timing of Kramer's disqualification motion undermines his argument that he was substantially justified in initially providing objection-only responses to the discovery. The second amended petition was filed on September 26, 2018, indicating that the matter was proceeding as a derivative action. At that point, the conflict of interest in BLG's representation of Respondents and Puracyp existed. Nonetheless, Kramer did not move to disqualify BLG until more than a year later. [9] In addition, the parties entered into a stipulation, which the court signed as an order on September 25, 2019, whereby Kramer agreed to forgo filing a motion to disqualify while the parties engaged in settlement negotiations. The stipulation expired 45 days later on November 9, 2019. However, Kramer waited an additional 45 days after the expiration of the stipulation and order to file his motion to disqualify counsel and did so on the same date that his discovery responses were due. And, at that time, Kramer, for the first time, objected to every single discovery request and interrogatory on the grounds

---

[9] During oral argument, there was some confusion regarding when BLG first represented Puracyp. BLG, on behalf of Respondents and Puracyp, filed a response to the second amended petition on or about April 12, 2019. So, at the very least, Kramer was aware of a conflict of interest at that point. However, there are multiple letters in the record, predating the filing of the second amended complaint, that suggest BLG was representing Puracyp. In any event, whether the conflict of interest was apparent on September 26, 2018 or April 12, 2019, Kramer did not act diligently in bringing his motion to disqualify BLG, which he filed on December 23, 2019.

17

that BLG was engaging in misconduct and Respondents could not conduct discovery while a disqualification motion was pending. The timing of the filing of the motion to disqualify belies any claim of urgency for Kramer to avoid waiving his right to seek disqualification of BLG.

For all these reasons, we determine Kramer was not substantially justified in initially providing only objections to the discovery requests and not providing any substantive responses whatsoever. Moreover, against this backdrop, we determine that substantial evidence supports the superior court's findings that Kramer did not make a good faith effort to provide any substantive responses in his initial response to the discovery, and he "unreasonably failed to provide even the most basic information about [his] claims in this case."

Having concluded that Kramer was not substantially justified in initially providing only objections in response to every single request and interrogatory, we next turn to Kramer's argument that the superior court erred in awarding sanctions because Respondents did not sufficiently engage in meet and confer efforts before filing their motion to compel.

" 'The Discovery Act requires that, prior to the initiation of a motion to compel, the moving party declare that he or she has made a serious attempt to obtain "an informal resolution of each issue." [Citations.] . . . " [Citation.]' " (*Clement v. Alegre* (2009) 177 Cal.App.4th 1277, 1293 (*Clement*).) " '[T]he statute requires that there be a serious effort at negotiation and informal resolution.' [Citation.] . . . '[A]rgument is not the same as informal negotiation' [citation]; . . . attempting informal resolution means more than the mere attempt by the discovery proponent 'to persuade the objector of the error of his ways' [citation]; and . . . '[a] reasonable and good faith attempt at informal resolution entails something more than bickering with [opposing]

18

counsel . . . . Rather, the law requires that counsel attempt to talk the matter over, compare their views, consult, and deliberate' [citation]." (*Id.* at p. 1294.)

Whether the moving party made a reasonable and good faith effort is entrusted to the trial court's discretion (*Clement, supra,* 177 Cal.App.4th at p. 1294) and is subject to review under the abuse of discretion standard (*Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 957; *Obregon v. Superior Court* (1998) 67 Cal.App.4th 424, 430 (*Obregon*)). "The trial judge's application of discretion in discovery matters is presumed correct, and the complaining party must show how and why the court's action constitutes an abuse of discretion in light of the particular circumstances involved." (*Obregon*, at p. 432.)

Here, Kramer has not carried his burden in showing the court abused its discretion in finding Respondents adequately engaged in the meet and confer process before bringing their motion to compel. He argues that "case law identifies a number of factors the [t]rial [c]ourt should have evaluated in determining whether Respondents' meet and confer efforts were reasonable," implying that the court abused its discretion in failing to consider those factors. To this end, he lists factors a court *can* consider when determining whether a party's meet and confer efforts were adequate. (See *Obergon, supra,* 67 Cal.App.4th at p. 431 ["The history of the litigation, the nature of the interaction between counsel, the nature of the issues, the type and scope of discovery requested, the prospects for success and other similar factors can be relevant"].) However, Kramer transforms these suggested factors to mandatory elements that a court must evaluate. He then argues under each factor that an award of sanctions was not warranted here, asserting that "it cannot be said that Respondents engaged in 'a reasonable and good faith attempt at informal resolution[,]' " and, thus, "the implied finding [that

19

Respondents adequately engaged in the meet and confer process] does not comport with 'the legal principles and policies that should have guided the court's actions[.]' "

In making his argument, Kramer glosses over the deferential abuse of discretion standard of review we must apply here. (*Obregon*, *supra*, 67 Cal.App.4th at p. 430.) Instead, he asks this court to make findings under the suggested factors in *Obregon* and then conclude the sanctions the superior court ordered against him unwarranted. We cannot proceed under the framework posited by Kramer.

As a threshold matter, we do not make factual findings in reviewing discovery orders. We do not engage in credibility determinations or the weighing of evidence. That is the province of the superior court. (*Tucker*, *supra*, 186 Cal.App.4th at p. 1562.) In addition, the factors Kramer urges us to apply are not mandatory. They are factors a court can consider in evaluating a party's meet and confer efforts. (See *Obregon*, *supra*, 67 Cal.App.4th at p. 431.) In other words, they are possible factors only. Indeed, the appellate court in *Obergon* made clear that "[t]he level of effort at informal resolution which satisfies the 'reasonable and good faith attempt' standard depends upon the circumstances." (*Ibid*.) Thus, the superior court here was not required to mechanically apply the factors Kramer lists in his opening brief. Instead, the court was to use its "broad powers and responsibilities to determine what measures and procedures are appropriate" in the circumstances presented. (See *ibid*.) The superior court properly did so in this matter.

We observe that the superior court cautiously and judiciously approached the issue of sanctions. Because the parties only began to address sanctions at the end of the February 7, 2020 hearing, the court continued the

hearing for a week to allow the parties to fully address the issue. At the February 14, 2020 hearing, Kramer's counsel spent a significant amount of time arguing that Respondents did not adequately meet and confer before filing the motion. The court considered these arguments and asked probing questions of counsel. The court also clearly explained why it did not find Kramer's counsel's argument persuasive. The court took issue with Kramer's position that he could simply provide objection-only responses and then make the discovery process "a negotiation." The court further emphasized that it did not believe it was "appropriate" for a party "to object to everything, and then start negotiating what tidbits will be provided." Moreover, the court "totally disagree[d]" that when the responding party only serves objections, "the other side can't file a motion to compel without some extensive face-to-face meet and confer."

Also, in expressing its concern that Kramer merely provided objections in his initial response to the discovery, the court pointed out that, although Respondents' discovery was "not perfect," it was "mostly reasonable." Kramer does not challenge the court's conclusion that Respondents' discovery was, for the most part, reasonable. Further, the court's comment about the reasonableness of the propounded discovery further supports its finding that Kramer acted unreasonably in failing to provide any substantive responses initially.

The court indicated that it would take the issue of sanctions under submission but explained how it would evaluate Respondents' meet and confer efforts on the record before it:

> "But I reject the idea that when you're dealing with a difficult, obstinate opponent who's objected to everything, if you have to jump through a whole bunch of hoops before you can bring a motion to compel, so I reject that. I think a reasonable—the statute requires a reasonable and good

21

faith attempt. But I am going to go back and look at the record to ask myself was there a reasonable and good faith attempt here."

Ultimately, the court impliedly found Respondents' meet and confer efforts were reasonable and in good faith and awarded Respondents sanctions. On this record, we cannot say such a finding constituted an abuse of discretion. The court found that Kramer did not make a good faith effort to provide any substantive responses before Respondents filed their motion. As we discuss *ante*, substantial evidence supports this conclusion.

Further, we agree that the evidence supports the court's conclusion that Kramer "unreasonably failed to provide even the most basic information about petitioner's claims in this case." Kramer's position that he would have somehow waived his right to seek disqualification if he provided substantive discovery responses has no support under existing California law. Also, Kramer's objection based on the disqualification motion does not even reference the issue of waiver.

Moreover, Respondents did engage in some meet and confer efforts with Kramer. Within a couple days of receiving Kramer's initial discovery responses, Respondents' counsel emailed Kramer's counsel a meet and confer letter. Although the letter could be characterized as aggressive, it did address Kramer's failure to provide any substantive responses as well as his objection based on the disqualification motion. It also gave Kramer until January 2, 2020 to provide substantive responses. Kramer's counsel, in turn, sent a brief email in response stating he could not address the discovery issues within the time frame provided while accusing opposing counsel of acting with an improper purpose because of the pending disqualification motion. In response, Respondents' counsel stated he needed the discovery responses because of the upcoming trial and other deadlines. Kramer's

22

counsel replied that he would respond to the letter "in due course of business" but would not respond further until he was finished with his holiday.

Respondents' counsel later proposed that Kramer provide supplemental responses to the discovery by January 10, 2020 because January 13 was the deadline to file a motion to compel. Kramer's counsel again claimed to be too busy to respond to the discovery by the requested date and suggested that Kramer would provide a substantive response to the December 26 meet and confer letter later with the hope of providing supplemental responses by February 13. Respondents' counsel declined the offer and countered that Kramer could serve responses no later than January 13, expressing the need for the discovery responses so Respondents could file a motion for summary judgment. Kramer did not agree to the proposal, and Respondents filed their motion to compel on January 13. Kramer's counsel finally provided a substantive response to the December 26 meet and confer letter on January 22, 2020.

Considering this foundation, we cannot say the superior court abused its discretion in finding Respondents adequately engaged in the meet and confer process before filing their motion to compel. Further, Kramer took a very hardline approach to the discovery process, serving objection-only responses and twice accusing Respondents' counsel of unseemly conduct (the first contained within his objections to every discovery request and interrogatory; the second in his initial email response to the December 26 meet and confer letter). And Kramer did not even provide a substantive response to the December 26 meet and confer letter until well after Respondents filed their motion. Certainly, on this record, the superior court's

award of sanctions did not constitute " ' "manifest abuse exceeding the bounds of reason." ' " (See *Doe*, *supra*, 200 Cal.App.4th at p. 1435.)[10]

_____

[10] In the reply brief, Kramer argues the superior court committed reversible error in ordering sanctions when one of the primary reasons Respondents moved to compel (Kramer served its answers late and falsified the proof of service) was shown to be without merit. Although Kramer discussed Respondents' claim that he had untimely served his initial discovery responses in the opening brief, he did not argue that this contention undermined the superior court's justification for awarding sanctions. The first time he explicitly did so was in the reply brief. Generally, we do not need to address an argument first raised in reply. (See *Simpson v. The Kroger Corp.* (2013) 219 Cal.App.4th 1352, 1370 ["[r]aising a new theory in a reply brief is improper and unfair," and an appellate court "may decline to consider an argument raised for the first time in a reply brief if no good reason is demonstrated for the delay in raising the point"]; *Minish v. Hanuman Fellowship* (2013) 214 Cal.App.4th 437, 471, fn. 19 ["we need not address arguments raised for the first time in the reply brief and decline to do so here"].) Further, even if we did consider this argument, we would find it wanting. Kramer argues he was "substantially justified" in opposing Respondents' incorrect late service and falsified proof of service argument. That argument is not of the moment. The court awarded sanctions because it found Kramer did not make a good faith effort to provide any substantive responses to the discovery and did not have a reasonable basis to provide objection-only responses. Respondents' abandonment of their claim that Kramer served his responses late and falsified the proof of service does not impact the court's reasoning in awarding sanctions. Here, Kramer has not shown he acted with substantial justification in providing objection-only responses to the discovery. (See *Doe*, *supra*, 200 Cal.App.4th at p. 1434.)

## DISPOSITION

The order is affirmed.  Respondents are entitled to their costs on appeal.

HUFFMAN, Acting P. J.

WE CONCUR:


AARON, J.


IRION, J.