Filed 2/29/24  Marriage of Campbell CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re Marriage of RICHARD JAMES and ARIANNE CHRISTINE CAMPBELL. | B319721<br><br>(Los Angeles County Super. Ct. No. LD070558) |
| RICHARD JAMES CAMPBELL et al.,<br><br>Respondents,<br><br>v.<br><br>ARIANNE CHRISTINE CAMPBELL,<br><br>Appellant. | |

APPEAL from a postjudgment order of the Superior Court of Los Angeles County, Michael Amerian, Judge.  Affirmed.

Law Offices of Melissa B. Buchman and Melissa B. Buchman for Appellant.

Brott Gross Fishbein, Mark Gross; Law Office of Gary Kurtz and Gary Kurtz for Respondent Richard James Campbell.

No appearance by Respondent Marlene W. Valter, Psy.D.

\* \* \* \* \* \*

This appeal arises out of a child custody dispute in which the wife's "misuse of the discovery process" and "unreasonable[]" positions prompted the trial court to award the husband $20,009.50 in discovery sanctions against her, as well as to reduce a discovery sanction award in the wife's favor against a neutral custody evaluator by $16,905 because that excess amount was driven by the wife's "overly aggressive" and "antagonis[tic]" litigation strategy. Finding no prejudicial error with these sanctions rulings, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

### I. Family and Litigation, Generally

#### A. *Family*

Richard James Campbell (husband) and Arianne Christine Campbell (wife) married in May 2007, and separated in January 2015. Their son Colin was born in November 2011; Colin has cerebral palsy and "global developmental delays" that render him nonverbal, and he also suffers from seizures.

#### B. *Litigation*

Husband filed for dissolution in February 2015. In October 2016, the couple stipulated to a judgment of dissolution that reserved the issue of custody over Colin. In September 2017, the couple stipulated to a judgment agreeing to share legal and physical custody of Colin equally.

2

In early 2018, wife and husband filed cross-motions to modify the custody and visitation order regarding Colin. Because the cross-motions would require extensive proof, the matter was initially set for an evidentiary hearing before a "hearing court judge" instead of before the "home court judge," to start on August 13, 2020. The hearing eventually went forward before the hearing court judge over eight days between January 12, 2021 and February 2, 2021.

On March 30, 2021, the hearing court judge issued a 34-page written ruling. The court awarded husband sole legal custody over Colin, but the parents would continue to share joint physical custody.[1] In awarding sole legal custody to husband, the court found that wife and husband had an "abysmal track record" at coparenting due to their tendencies to "dismiss" and "demonize" one another but found that, as between the two parents, it was in Colin's best interest to have *husband* as the decisionmaker because he was the parent who "more often sought to de-escalate conflict," because he "favored more conventional and tested treatments" for Colin, and because wife's "judgment" was clouded by "her anxiety and antipathy" toward husband.

As described next, the 38 months between the filing of the cross-motions and their resolution vividly illustrated wife's antipathy toward husband: Wife repeatedly filed ex parte applications hundreds of pages in length, forum shopped by filing

_____

1 Wife had supplemented her request for sole custody of Colin as part of a potential residential move from the San Fernando Valley, where husband also resided, to eastern San Gabriel Valley. The court ruled that, if wife moved, she would have physical custody of Colin for three weekends each month. Shortly after the court issued this custody ruling, wife abandoned her intention to move.

motions seeking identical relief from both the home court judge and the hearing court judge, played "hardball" in a "petty" way by filing some applications the day before holidays when she knew opposing counsel would be unavailable, and sought "excessive" remedies more consistent with a "vendetta" than uncovering evidence pertinent to adjudication. We proceed to recount only those portions of this litigation pertinent to the issues on appeal.

## II. Wife's Litigation "Vendetta" Against the Custody Evaluator

### A. *The parties stipulate to a custody evaluator*

On April 5, 2018, husband and wife stipulated to have the home court judge appoint Marlene W. Valter, Psy.D., (Dr. Valter) as a child custody evaluator. Under this stipulation—which was signed into a court order—Dr. Valter was to make recommendations regarding legal and physical custody, a parenting plan, and other custody and visitation issues; her report was due in July 2018.

### B. *Dr. Valter delays providing report*

Dr. Valter did not submit her report until August 26, 2019, some 13 months after its original due date. In taking so long, Dr. Valter ignored repeated requests from the parties, and faced two court orders setting April 10, 2019 and August 25, 2019 deadlines. At one point during this long wait, the home court judge indicated he was "flabbergasted" and "speechless" at how a "professional" like Dr. Valter failed to fulfill her "promise[]" to finish the report in a timely fashion.

4

**C.** ***Wife seeks to strike Dr. Valter's report, to obtain further documentary and testimonial information to undermine it, and to punish Dr. Valter by having the court imprison her or make her "pick[] up trash on the highway"***

1. *Motion to strike Dr. Valter's report*

In September 2019, wife moved to strike Dr. Valter's report as being stale and due to Dr. Valter's "bias" against wife. The home court judge denied the motion without prejudice. Then, in June 2020, wife again moved to exclude the report, and the hearing court judge denied the motion because wife's allegations against Dr. Valter were "based on speculation." Ultimately, the court elected not to rely on Dr. Valter's report *at all* in its March 2021 custody ruling.

2. *Subpoena for production of Dr. Valter's business records*

On July 7, 2020, wife served Dr. Valter with a subpoena for production of business records, including (1) all documents Dr. Valter relied on in making the recommendations in her report, (2) all documents related to who Dr. Valter interviewed, and (3) a copy of Dr. Valter's entire case file.

When Dr. Valter failed to respond to the subpoena, wife filed a motion on August 6, 2020, requesting that the trial court (1) compel Dr. Valter to produce all documents responsive to the subpoena; (2) order Dr. Valter to pay $10,632.50 in monetary sanctions; and (3) hold Dr. Valter in criminal contempt. The court set a hearing date for September 30, 2020.

Prior to the hearing, Dr. Valter made two productions of documents.

Despite Dr. Valter's productions, wife did not alter her request. Instead, she appeared at the September 2020 hearing

continuing to press for criminal contempt and, specifically, to advocate for Dr. Valter's imprisonment. Fearing incarceration, Dr. Valter—who had appeared without counsel—invoked her Fifth Amendment privilege against self-incrimination and sought a continuance to hire a lawyer. The court continued the hearing until November 19, 2020.

At the November 2020 hearing, wife still encouraged the court to hold Dr. Valter in criminal contempt, but urged that she be sentenced to "pick[] up trash on the highway." The court ordered Dr. Valter to disclose further documents and continued the matter to January 5, 2021.

Prior to the January 2021 hearing, Dr. Valter produced further documents as ordered by the court.

At the January 2021 hearing, and despite the further productions, wife still insisted upon a finding of criminal contempt and a sentence of community service against Dr. Valter. The court denied wife's request to hold Dr. Valter in contempt, but took her request for monetary sanctions under submission.

3.      *Subpoena for appearance at deposition*

Decrying Dr. Valter's production of documents as "unintelligible," wife served Dr. Valter with a subpoena to appear for a deposition on December 22, 2020, regarding the method of her document production. When Dr. Valter objected that the deposition was set to occur after the discovery cutoff date (of 30 days prior to the January 12, 2021 start date for the evidentiary hearing), wife filed an ex parte application asking the trial court to (1) compel Dr. Valter to attend the deposition; and (2) impose $5,000 in monetary sanctions. After further briefing from Dr. Valter and husband, the trial court denied wife's application,

6

reasoning that it was "an implicit request to reopen discovery" and that such a request was without merit because the information sought from Dr. Valter's deposition was not "so necessary as to justify reopening discovery." The court did not explicitly rule on wife's request for monetary sanctions.

### D. *Trial court imposes sanctions against Dr. Valter at an amount less than wife requests*

After the hearing court judge issued the custody ruling in March 2021, and after further briefing and an October 2021 hearing on the issue of whether and how much to sanction Dr. Valter for her initial noncompliance with the subpoena, the home court judge issued a ruling on January 26, 2022. Wife's initial request for monetary sanctions had ballooned to $22,655. The court ruled that Code of Civil Procedure section 1987.2[2] imbued the court with discretion to award sanctions, but elected to impose $5,750 in sanctions against Dr. Valter. The court declined to award the full amount wife sought because, in its view, wife's "insistence on punishing Dr. Valter with criminal contempt [wa]s beyond the pale" and "reflective of a personal vendetta" by wife or her counsel fueled by "animosity and antagonism." Because the fees wife sought to recover as sanctions were a direct product of her own "overly aggressive strategy," the court reduced the sanction award to what it viewed as the more appropriate amount.

---

[2] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

7

### III. Wife's Attempts to Block Husband's Deposition of Her Expert

#### A. *Wife "fully commit[s]" to calling a competing child custody expert as a witness*

On December 16, 2020—three days after the discovery cutoff date before the January 12, 2021 evidentiary hearing—wife at a prehearing status conference before the hearing court judge announced that she intended to call an expert witness to impeach Dr. Valter's opinion. When husband informed the court that this was the first time wife had "fully committed" to calling this expert, the hearing court judge indicated that he would order the deposition of wife's expert as necessary, and instructed that any motions be filed with him (rather than with the home court judge).[3]

#### B. *Wife resists husband's efforts to depose her expert witness*

After wife ignored husband's attempt to meet and confer regarding a deposition date for wife's expert, husband on December 18, 2020 issued a subpoena to depose the expert on January 4, 2021.

On Christmas Eve 2020 (despite notice that husband's attorney was unavailable), wife filed with *the home court* judge (despite the hearing court judge's request to the contrary) an ex parte application to quash the deposition subpoena on the ground

---

[3]    This hearing was not reported. Because husband and wife provide predictably divergent versions of what transpired at the hearing, we apply the appropriate standard of review by recounting what transpired at the hearing in the light most favorable to the trial court's discovery sanctions rulings at issue in this appeal.

that the discovery cutoff date had passed (despite her position in seeking to depose Dr. Valter after that cutoff date) and seeking sanctions. Husband opposed wife's application, and also sought sanctions. The home court judge denied wife's application, ordering wife's expert to comply with the subpoena. In issuing the order, the court recognized that its order "effectively grant[ed husband] leave to conduct expert discovery after the discovery cutoff date," but found that husband's reasons "for not completing the discovery earlier are reasonable" (namely, wife's failure to commit to calling her expert sooner) and that deposing the expert was "necess[ary]" because husband "is entitled to be aware of precisely how [the expert] will attack Dr. Valter's report before the hearing begins." The court denied wife's request for sanctions, and set husband's request for sanctions for hearing on January 5, 2021.

After husband agreed to accommodate wife's expert's schedule by moving the deposition to January 7, 2021, and after wife then informed husband that she would not produce her expert on the new date, husband on January 5, 2021 filed with the home court judge an ex parte application to compel the deposition of the expert. Wife filed an opposition, which also included a motion to vacate the earlier order denying her motion to quash.

At the January 5, 2021 hearing, the court denied wife's motion to vacate and granted husband's application to compel the deposition of wife's expert. The court also took under submission husband's still-pending request for sanctions in opposing wife's Christmas Eve filing.

9

**C.    *Trial court imposes sanctions against wife***

When the home court judge took up the still-pending monetary sanctions issue, and in response to husband's additional motion for sanctions for successfully compelling the deposition of wife's expert, further briefing, and an October 2021 hearing, the court issued a January 2022 order awarding husband $6,740 in sanctions against wife (to be deducted from a future attorney fee award for wife). The court reasoned that (1) section 2024.050, subdivision (c), makes sanctions mandatory for anyone who "unsuccessfully makes or opposes a motion . . . to reopen discovery"; and (2) wife's attempts to block husband's deposition of her expert were "not substantially justified" because she "wait[ed] until the eleventh hour to confirm" that the expert would indeed testify but then "play[ed] hardball" based on an incorrect interpretation of the discovery statutes.

## IV.    Wife's Discovery Motions Against Husband

**A.    *Wife propounds requests for production to husband***

In December 2019 and January 2020, wife propounded two sets of requests for production on husband. In total, wife sought 122 categories of documents, including husband's financial documents like tax returns, credit card statements, and investment documents; husband's business documents like accounts receivables, bank account statements, and payroll; all communications between husband and his new fiancée regarding Colin or wife; and all documents supporting the statements husband made in support of his January 2018 custody motion. These document requests were in addition to the 186 requests for admissions and 131 special interrogatories wife also propounded on husband around the same time.

10

**B.    *The trial court extends husband's deadline***

After wife declined husband's request for an extension to respond, husband filed an ex parte application on March 5, 2020 requesting an eight-week extension to respond to the "voluminous" discovery requests.  Wife opposed.  After a hearing, the trial court granted husband an extension to May 8, 2020.

**C.    *The parties meet and confer***

On May 8, 2020, husband served written responses and some documents in response to one set of requests for production, but served a blanket objection and produced no documents in response to the other.

Wife sent a meet-and-confer letter for each set of responses on May 22, 2020.  On June 4, 2020, husband responded to one of the letters.  Wife sent two additional letters, on June 4 and June 5, 2020, but received no further response from husband.

**D.    *Wife files parallel motions before two judges***

1.    *Wife files motion to compel before home court judge*

On June 19, 2020, wife filed with the home court judge a motion to compel further responses and production from husband.  She also sought issue sanctions against husband as to several facts, as well as monetary sanctions.  The hearing was set for August 19, 2020, which was *after* the evidentiary hearing on custody was originally set to begin (and, obviously, after the discovery cutoff as well).

2.    *Wife files parallel motion in limine before the hearing court judge*

On June 23, 2020 (just four days after filing the motion to compel), wife filed with the hearing court judge two motions in limine seeking, among other things, issue sanctions against

11

husband for his failure to comply with the requests for production; one was more than 200 pages, the other more than 100.  She specifically cited various discovery statutes and argued, with the "fastly approaching custody hearing," "the only remedy at this juncture" to address husband's "gamesmanship" was to grant the motions in limine and impose issue sanctions.  Husband opposed the motions, and wife filed further replies.

3.     *The hearing court judge denies wife's motions in limine*

After a July 2, 2020 hearing, the hearing court judge denied wife's motions in limine.  The court noted it was "highly unorthodox to file simultaneously discovery motions before two bench officers on the same topic" as wife did.  It then rejected wife's requests for issue sanctions as an "unjustified" and "extreme overreach" because husband had not first been compelled by a court order to produce discovery, as required by section 2031.320, subdivision (c).  In light of wife's unsuccessful motions, the court concluded that sanctions against *wife* were mandatory, but deferred that issue pending resolution of the custody dispute.  The hearing court judge then reminded the parties that, as is the standard in trials, any document a party seeks to introduce at the custody hearing that was not produced in discovery would be subject to exclusion.

4.     *Wife continues to litigate the motion to compel before the home court judge*

Just days after the hearing court judge denied her motions in limine, wife on July 7, 2020 filed an ex parte application back before the home court judge to advance the hearing on her motion to compel so it could be decided prior to the evidentiary hearing.  The home court judge granted that relief, and conducted an

12

informal discovery conference on July 9, 2020; as a result of that conference, the parties whittled down the dispute to only one particular request for production, and filed further briefing in mid-July. After the evidentiary hearing was moved to January 2021, the home court judge in late August 2020 (1) granted wife's motion to compel in part by ordering husband to produce a tailored subcategory of documents in response to that one request, (2) denied her request for issue sanctions, and (3) deferred the issue of monetary sanctions.

### E. *Trial court imposes sanctions against wife*

When the home court judge took up the still-pending sanctions issue after resolution of the custody dispute, and in response to husband's additional motion for sanctions for opposing wife's motions in limine, the court entertained further briefing, held an October 2021 hearing, and issued a January 2022 ruling awarding husband $13,269.50 in sanctions against wife (to be deducted from a future attorney fee award for wife). The court reasoned that the motions constituted a "misuse of [the] discovery" process because they were "procedurally doomed," as issue sanctions were unwarranted absent a prior motion to compel responses.

## V. Wife's Appeal

Wife filed this timely appeal, challenging the home court's January 2022 discovery sanctions rulings.

## DISCUSSION

Wife challenges the trial court's three discovery sanctions rulings. We review a trial court's imposition of such sanctions for an abuse of discretion (*Manlin v. Milner* (2022) 82 Cal.App.5th 1004, 1023; *Kwan Software Engineering, Inc. v. Hennings* (2020) 58 Cal.App.5th 57, 73 [reversal of discretionary sanctions order

13

appropriate only if trial court was "'arbitrary, capricious, or whimsical in the exercise of that discretion'"]; *Cornerstone Realty Advisors, LLC v. Summit Healthcare REIT, Inc.* (2020) 56 Cal.App.5th 771, 789 (*Cornerstone*)), while reviewing any subsidiary legal questions de novo (*People v. Doss* (2014) 230 Cal.App.4th 46, 54; *Farmers Ins. Exchange v. Superior Court* (2013) 218 Cal.App.4th 96, 106) and any subsidiary factual questions for substantial evidence (*Manlin*, at p. 1023; *Cornerstone*, at p. 789). Contrary to what wife argues, our task is to review the trial court's ruling and not its rationale, so we may affirm on any ground supported by the record. (*Kwan*, at p. 73.)

## I.     Reduction in Wife's Sanctions Award Against Dr. Valter[4]

The trial court did not abuse its discretion in awarding wife less than the total amount of monetary sanctions she sought against Dr. Valter.[5]

The trial court's sanctions order has two potential statutory bases. First, section 1987.1 empowers a party to move the trial court for an order "directing" a third party to "compl[y]" with a subpoena for document production, and section 1987.2 grants the

---

[4]     Dr. Valter did not file a respondent's brief on appeal.

[5]     Although an appeal may be taken from an order *directing payment* of monetary sanctions in excess of $5,000 (§ 904.1, subds. (a)(11) & (a)(12)), the *denial* of sanctions generally is not appealable (see *Wells Properties v. Popkin* (1992) 9 Cal.App.4th 1053, 1055). We nevertheless review wife's challenge to this portion of the discovery rulings because it is a postdissolution order that is a final determination of the sanctions issue between wife and Dr. Valter. (See *Shelton v. Rancho Mortgage & Investment Corp.* (2002) 94 Cal.App.4th 1337, 1345.)

court the discretion to "award the amount of the reasonable expenses incurred in making . . . the motion" unless the motion was "made . . . in bad faith or without substantial justification." (§§ 1987.1, subd. (a), 1987.2, subd. (a).)  Second, section 2025.480 empowers a party to move the court "for an order compelling" a third party to "produce" documents under a subpoena for document production, and also *requires* the court to "impose a monetary sanction," defined as the movant's "reasonable expenses" such as "attorney's fees," against the third party if it "unsuccessfully . . . opposes [such] a motion to compel," unless the third party "acted with substantial justification."  (§§ 2025.480, subds. (a), (i) & (j), 2023.030, subd. (a); see *Unzipped Apparel, LLC v. Bader* (2007) 156 Cal.App.4th 123, 130-134 [holding that section 2025.480's time limits govern "business records subpoenas" issued against nonparties].)  Here, because substantial evidence supports the trial court's implicit findings that wife had substantial justification for moving to compel Dr. Valter's further production in response to the subpoena and that Dr. Valter lacked substantial justification for her initial noncompliance with the subpoena, the court did not abuse its discretion in awarding sanctions against Dr. Valter.

The trial court also did not abuse its discretion in awarding only $5,750 in sanctions rather than the $22,655 wife requested because both statutory bases provide for the award of only "*reasonable* expenses."  Contrary to what wife suggests, a trial court is "not required to award sanctions in the full amount requested" because "the principles of reasonableness and causation" impose a duty on the court to, in its discretion, "reduce the amount of fees and costs requested" to "fix a reasonable amount" actually "incurred as a result of discovery abuse."

15

(*Cornerstone, supra*, 56 Cal.App.5th at p. 791.)  Here, the trial court acted within its discretion in concluding that wife's "overly aggressive" litigation strategy in *insisting* upon holding Dr. Valter in criminal contempt was unnecessary to secure Dr. Valter's compliance, and instead improperly motivated by desire to *punish* Dr. Valter, which had the effect of driving up the very expenses wife sought.  (Accord, *Parker v. Wolters Kluwer United States, Inc.* (2007) 149 Cal.App.4th 285, 294 [affirming trial court's ruling cutting the amount of mandatory sanctions by two-thirds]; see also *Williams v. Russ* (2008) 167 Cal.App.4th 1215, 1223 [discovery sanctions not intended "to punish the offending party"]; *Victor Valley Union High School Dist. v. Superior Court* (2023) 91 Cal.App.5th 1121, 1139 [contempt sanctions reserved for "extreme cases"].)

Wife attacks the trial court's ruling on what boils down to two grounds.

First, she argues that the trial court was required to issue sanctions under section 2025.480 (rather than section 1987.2), and that a remand is therefore necessary for the court to exercise its discretion under what wife believes is the sole controlling statute.  This argument lacks merit.  Although, as wife points out, the imposition of sanctions is mandatory under section 2025.480 but discretionary under section 1987.2, the trial court did *impose* sanctions, so this particular distinction between the two statutes is utterly irrelevant to wife's appeal attacking the *amount* of sanctions.  Because the two statutes employ the same standard as to the amount (that is, limiting it to reasonable expenses), a remand for the trial court to conduct the same exact inquiry into reasonableness would be a pointless waste of time.  (See *People v. Gutierrez* (2014) 58 Cal.4th 1354, 1391 [remand

unnecessary when record "'clearly indicate[s]'" trial court "would have reached the same conclusion"]; *People v. McDaniels* (2018) 22 Cal.App.5th 420, 425; *People v. McVey* (2018) 24 Cal.App.5th 405, 419.)

Second, wife argues that the trial court's reduction in the award of sanctions "punished" her, "penalized" her, and "impede[d]" her access to court in violation of due process. Specifically, wife urges that because a third party's disobedience of a subpoena "may be" punishable by contempt (§§ 1991, 2025.480, subd. (j), 2023.030, subd. (e)), any expenses she incurs in pursuing this "weapon[]" in her "arsenal" are automatically reasonable, and any denial of those expenses is automatically a denial of due process. This argument is absurd. A party who is entitled to sanctions in the amount of reasonable expenses incurred for swatting a fly may be entitled to the cost of a fly swatter but is not *constitutionally entitled* to the cost of procuring Hercules's club when a fly swatter would do. By constitutionally mandating sanctions in an amount that would reimburse the deployment of any and all "weapons," adopting wife's argument would effectively encourage the type of scorched-earth litigation conduct that occurred here—a result we find to be inimical to the ascertainment of truth that lies at the heart of the Civil Discovery Act (§ 2016.010 et seq.). (*Boston v. Penny Lane Centers, Inc.* (2009) 170 Cal.App.4th 936, 950 [purpose of discovery statutes is "'to assist the parties and the trier of fact in ascertaining the truth'"]; *Juarez v. Boy Scouts of America, Inc.* (2000) 81 Cal.App.4th 377, 389 [purpose of discovery statutes is to "'enhance the truth-seeking function of the litigation process'"], disapproved on another ground in *Brown v. USA Taekwondo* (2021) 11 Cal.5th 204, 222, fn. 9.)

17

## II. Imposition of Sanctions Against Wife

### A. *Sanctions for ex parte applications to block deposition of expert*

The trial court did not abuse its discretion in awarding husband monetary sanctions against wife for her unsuccessful attempts to block husband from deposing her expert.

The court was statutorily empowered to impose those sanctions. Section 2024.050 vests the court with discretion to grant a party leave to "reopen discovery" after the cutoff after balancing several competing considerations. (§ 2024.050, subds. (a) & (b).) That statute also makes sanctions mandatory against any party "who unsuccessfully . . . opposes a motion . . . to reopen discovery." (*Id.*, subd. (c).) Because husband's subpoena would result in a deposition of wife's expert *after* the discovery cutoff date, his subpoena *necessarily* functioned as a request to reopen discovery and all of wife's attempts to block the subpoena—namely, (1) her ex parte application to quash the deposition subpoena, (2) her motion to vacate the court's denial of her application to quash, and (3) her opposition to husband's ex parte application to compel the deposition—necessarily functioned as oppositions to that request. Indeed, the substantive import of husband's subpoena was obvious to everyone below: The trial court treated husband's subpoena as a motion to reopen and proceeded to evaluate the statutory considerations pertinent to reopening discovery, and wife's multifarious filings opposing the subpoena all complained that the discovery cutoff date had passed. Because the trial court understood and conducted the proper analysis, wife's citation to *Pelton-Shepherd Industries, Inc. v. Delta Packaging Products, Inc.* (2008) 165 Cal.App.4th 1568, 1571, 1588 (*Pelton-Shepherd*), which found error where a court

18

failed to do conduct the proper analysis, is irrelevant. And because *wife* explicitly recognized that husband's subpoena, if permitted, would reopen discovery, her suggestion that she was somehow blindsided by the sanctions award is disingenuous. Because wife was "unsuccessful[]" in blocking husband from deposing her expert after the discovery cutoff, monetary sanctions against wife were *required*. (§ 2024.050, subd. (c).)

Wife makes two further arguments.

First, she argues that the trial court somehow lacked the authority to impose sanctions under Code of Civil Procedure section 2024.050 because husband did not formally move to reopen discovery, and because no one cited to that specific statute in their filings regarding deposing wife's expert. We reject this argument. Like the law in general, discovery motions turn on their substance, not on the label the parties choose to attach to those motions or the statutory provisions they elect to cite or not to cite. (*Sole Energy Co. v. Petrominerals Corp.* (2005) 128 Cal.App.4th 187, 193 ["'The nature of a motion is determined by the nature of the relief sought, not by the label attached to it. The law is not a mere game of words'"]; *O&C Creditors Group, LLC v. Stephens & Stephens XII, LLC* (2019) 42 Cal.App.5th 546, 560 ["Like the trial court, we do not find labels to be dispositive and instead look at the substance of the motion"]; *Hudson v. Superior Court* (2017) 7 Cal.App.5th 999, 1011 ["a trial court may disregard the caption of a motion and instead treat it in accordance with the relief it requests"]; Civ. Code, § 3528 ["The law respects form less than substance"].) This is why a motion that is not labeled a motion to reopen can still function as one if the court and parties treat it as such. (Cf. *Pelton-Shepherd*,

19

*supra*, 165 Cal.App.4th at p. 1588.) That is precisely what happened here, and thus the sanctions award was appropriate.

Second, wife argues that husband's requests for sanctions were untimely. Wife waived this argument by failing to raise it in the trial court or in her opening brief on appeal. (*Raceway Ford Cases* (2016) 2 Cal.5th 161, 178 [arguments raised for first time in reply brief are waived]; *People ex rel. Feuer v. Superior Court* (2015) 234 Cal.App.4th 1360, 1384 ["raising arguments for the first time in a reply brief is unfair to the other part[y]"].) Wife is wrong in any event. She contends that husband's request for sanctions was untimely because he did not first seek to reopen discovery, but his subpoena necessarily sought to reopen discovery and a trial court is not required to reopen discovery in one order prior to issuing a second order compelling discovery; a court may do both simultaneously in the same order. (See *Pelton-Shepherd*, *supra*, 165 Cal.App.4th at pp. 1587-1588.)

### B.     *Sanctions for veiled motions to compel*

The trial court did not abuse its discretion in awarding husband monetary sanctions against wife for her unsuccessful motions to compel discovery.

Although wife *labeled* her motions filed with the hearing court judge as motions in limine, the *substance* of her two motions was for relief in a discovery dispute—namely, for issue sanctions against husband for his failure to comply with her requests for production. Indeed, her motions repeatedly cited to the Civil Discovery Act. Thus, wife's motions were motions to compel. As such, the court was obligated to impose monetary sanctions against her if they were "unsuccessful[]." (§§ 2031.300, subd. (c), 2031.310, subd. (h), 2031.320, subd. (b).) Here, they were. That is because issue and evidentiary sanctions may be

20

sought *if and only if* the party to be sanctioned has violated a court order compelling discovery (§§ 2023.010, subds. (d)-(g), 2023.030, 2031.300, subd. (c), 2031.310, subds. (a) & (h), 2031.320, subd. (a)), and no such order had been issued against husband with respect to the requests for production. Thus, sanctions were not only appropriate here; they were required.

Wife asserts three arguments in response.

First, she argues that (1) motions in limine are *not* motions to compel (and provides a seven-page exegesis in support of her theory), (2) she labeled her motions as motions in limine, such that (3) she cannot be sanctioned for filing unsuccessful motions to compel. This argument is flawed. To begin, a motion to compel *can* be brought as a motion in limine (see, e.g., *Reedy v. Bussell* (2007) 148 Cal.App.4th 1272, 1290 [terminating sanctions sought in motion in limine]); they are not mutually exclusive procedural vehicles. Further, and as noted above, what matters is the *substance* of wife's motions—not the label she attaches to them. To hold otherwise is to invite litigants to engage in duplicitous doublespeak, as this case vividly illustrates: Wife specifically argued in her motions in limine that the discovery statutes—and, specifically, section 2023.030—applied to husband and authorized an award of issue sanctions in her favor, yet now argues that those very same statutes do not apply to her or authorize an award of monetary sanctions in his favor. Even more perniciously, wife filed her motions in limine as a backdoor tactic to have the discovery dispute pending before the home court judge adjudicated first by the hearing court judge. Seeing the motions in limine for what they were—discovery motions— the court did not abuse its discretion in treating them as such.

21

Second, wife argues that sanctions were not warranted because she "acted with substantial justification" in bringing her motions.  (§§ 2023.030, subd. (a), 2031.300, subd. (c), 2031.310, subd. (h), 2031.320, subd. (b).)  Specifically, she claims she was "forced" to file the motions in limine with the hearing court judge because husband's delay in meeting and conferring over the discovery dispute caused her to miss the deadline to have her motion to compel before the home court judge heard before the then-scheduled date for the evidentiary hearing.  This does not amount to substantial justification.  Substantial justification means that a motion is """"well grounded in both law and fact.""" (*Golf & Tennis Pro Shop, Inc. v. Superior Corut* (2022) 84 Cal.App.5th 127, 139.)  To begin, wife's argument does not address whether there was substantial justification regarding the *merits* of her motions, which—as noted above—unquestionably fail because she was seeking issue sanctions despite the absence of a predicate court order compelling discovery.  Wife's argument instead deals with her justification for using one procedural vehicle over another for presenting her meritless arguments; we do not see how her choice of vehicle can imbue her substantially unjustified motions with substantial justification.  But even assuming they could, wife's reasons for filing her motions in limine are not persuasive because if—as wife now claims—she filed her motions in limine solely because the hearing date for her motion to compel before the home court judge was set too late, wife had another viable remedy available:  She could have sought ex parte relief to advance the hearing date.  Indeed, wife pursued—and obtained—that very remedy after the hearing court judge denied her motions in limine as a meritless and

22

procedurally improper end run around her pending motion to compel before the home court judge.

Third and lastly, wife argues that imposing sanctions for her unsuccessful motions in limine before the hearing court judge was improper because she ultimately prevailed on her parallel (and almost simultaneously filed) motion to compel before the home court judge.  Wife is comparing apples to oranges.  Just because the home court judge ordered husband—*after* the evidentiary hearing—to produce documents responsive to a single request does not mean wife's motions in limine seeking a far broader spectrum of issue sanctions were proper, particularly given the absence of any motion to compel production of the documents at the time issue sanctions were sought in those motions in limine.

## DISPOSITION

The order is affirmed.  Husband is entitled to his costs on appeal.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.

HOFFSTADT

We concur:


_____, P. J.

LUI


_____, J.

ASHMANN-GERST

23